## STATE ex rel. ATTORNEY GENERAL v. BRECKENRIDGE.

No. 18304. Opinion Filed July 26, 1927.

(Syllabus.)

1. **Attorney and Client—Criticism of Judicial Opinions—Unfair Discussion by Attorney in Newspaper Article.**

This court recognizes that the public has a right to criticize judicial opinions and that this right is of prime importance. The exercise of such right must be conceded. There is no inhibition against the same either in the law of the state or of the federal government. But it does not follow from this that a licensed attorney at law does not violate his oath as an officer of this court and the duty imposed upon him by statute as to his attitude and demeanor toward the courts and the public, by writing and permitting to be printed in a newspaper, a dissertation on a judicial determination of a court which fails to give the facts and a fair discussion of the law, in that it fails to cite the statutes on the questions discussed and the leading and controlling authorities from the various states of the Union. Such a discussion by a member of the bar, if he chooses to exercise the right, should be confined to the facts and a fair deduction from the adjudicated cases on the subject in question; he should refrain from misleading language and innuendoes poisonous to the minds of the reading public—this not because the court says this should be his attitude, but it is demanded of him by the law in the interest of the public good.

2. **Same—Attorneys Subject to Penalty for Demeanor Disrespectful to Courts.**

If necessary to the maintenance of that respect due from members of the bar to courts and the judges thereof or the maintenance of respectability of the legal profession itself, this court will use its authority to strike the name of any offending attorney from the rolls and disbar him. This court will exercise this power, however, with moderation, discretion, and judgment. It is a prerequisite under the law of this state for admission to the bar that the applicant take an oath which requires him at all times to demean himself towards the courts and the judges thereof in such manner as not to bring the courts or judges thereof into disrepute before the public.

3. **Same—Attorney Suspended for 30 Days for Publishing Disrespectful Criticism of Opinion of Court.**

The writing and publication of the article in question here is in violation of the oath of the respondent and the duty he owed under the law of this state, both to the court and to the public, for the violation of which it is the order and judgment of this court that he be suspended from the practice of law for a period of 30 days from this date.

Original action for disbarment of M. A. Breckenridge. Respondent suspended.

The Attorney General, for petitioner.

Owen Owen and H. Tom Kight, for respondent.

BRANSON, C. J. This is an original action filed under section 4107, C. O. S. 1921. The parties are referred to as petitioner and respondent.

A citation was duly issued and served on the respondent. A hearing was had in open court, at which time the respondent appeared in person and by counsel.

The complaint charges that the respondent is an attorney at law licensed by this court and engaged in the practice of law in the city of Tulsa; that as such he is an officer of this court; that on the 1st day of May, 1927, he violated his oath of office as such and breached the duties imposed upon him as an attorney at law, briefly in this, to wit:

That he did designedly prepare and cause to be printed and published in the Sunday edition of the Tulsa Daily World, a newspaper of state-wide circulation. a contemptuous, scurrilous, defamatory, false and malicious article in which the respondent did deliberately make a misstatement of law governing contempts of court and deliberately impugn the motives of the members of this court and impugn the motives of the specially appointed members (special court) to try cause No. 18080 on the docket of this court by then and there stating in said article that contempt was a crime and governed by the criminal procedure of this state; that the said article further charged this court had arbitrarily and for a sinister purpose undertaken to suspend the writ of habeas corpus. which was a misstatement of both facts and law made de-

signedly, and that the said article did intentionally omit to cite section 432, C. O. S. 1921. By reason thereof the said respondent violated his duties as an attorney at law, on account of which the prayer is that he be disbarred.

The published letter prepared by the respondent is too voluminous to quote. The law (section 4108, C. O. S. 1921) provides that the record in such cases shall be filed and preserved. The record in this cause is so preserved.

Before quoting the substance of certain portions of said letter, the record discloses that the respondent was attorney for the said Tulsa Daily World; that the said paper had published for hire in its issue of October 31, 1926, and in several issues thereafter, an article signed by one O. O. Owens, the character of which is scurrilous, is not subject to debate; that the said author of said paid scurrilous matter had been, for reasons subsequently arising, cited before this court to show cause why he should not be adjudged in contempt and punished therefor; that his attorney, H. B. Martin, had also been cited. The history of these cases is found in opinions reported in 125 Okla. 1, 256 Pac. 340; 125 Okla. 51, 256 Pac. 667, and 125 Okla. 66, 256 Pac. 704; that respondent was a witness for said Martin in his trial (125 Okla. 51, 256 Pac. 667). Knowing this situation, the respondent prepared for his client a letter which he admits was published with his consent.

The letter in part is, in substance, that this court undertook to suspend the writ of habeas corpus in violation of the Constitution of the state; that the righteousness of the incarceration of an accused is so jealously guarded that the power to adjudicate that question may be presented in every court of record and to every judge thereof in the state, even county courts; that to this end, if any judge is of the opinion that a person incarcerated is held illegally, he is bound to release him from such restraint, and thereupon the prisoner is entitled to unrestrained liberty; that the alleged contempt of Owens was a criminal offense and that the Criminal Court of Appeals had the power to override the final judgment of this court in such a proceeding; that this court had prohibited the last-named court from issuing a writ of habeas corpus; that this court when it sentenced the said Owens lost jurisdiction and did not possess any power to enforce its judgment; that the sentence of this court imposed upon the said Owens, of one year in jail and fine of $5,000, was

asserted by the respondent as not within the jurisdiction of this court; that the action of this court was arbitrary and that by its act this court had become a despot, subject neither to the Constitution nor laws of the state of Oklahoma; that if a person imprisoned sees fit, he might apply to one judge of the state or from one district judge to another until he has exhausted the number of district judges in the state, then proceed to each member of the Supreme Court and to the members of the Criminal Court of Appeals; that he would still be entitled to apply to the last and remaining one, and if denied he could apply to the respective courts as a whole, and the fact that he had not been discharged would not prevent him being discharged by the last judge in the state to whom he might apply; that the action of the court should not have been taken, however interested some of its members might be in its outcome; that the action of this court was a star chamber proceeding.

Reference is made to the record for the detailed statements and other inferences to be drawn from the statements made.

The respondent on the hearing took the witness stand. He stated he was admitted to the bar more than 21 years previous. He admitted that when he wrote the article and permitted it to be published he misstated the facts as to this court's granting a writ of prohibition against the Criminal Court of Appeals, prohibiting it from issuing a writ of habeas corpus. He was shown the record which discloses that the judge of that court to whom application was made refused to issue a writ of habeas corpus, but ordered the matter to be set for a day to determine whether petitioner should be released, and that the record showed that this court prohibited the interference by the Criminal Court of appeals, or any judge thereof, with the final judgment of this court. He admitted that his statements published were incorrect as to certain facts and inaccurate as to law. He admitted that he was unfamiliar with the decisions of the territorial Supreme Court as to section 432. C. O. S. 1921; that he did not give the reading public the benefit of the said section, nor the benefit of the decisions referred to; that many of the alleged propositions of law which were set out were erroneous and that he had not investigated authorities from various states in the Union as well as the Supreme Court of the United States on the questions he discussed. He admitted that there was no appeal provided by statute from the Supreme Court to the Criminal

Court of Appeals; that his statement, in effect, that such an appeal would lie from this court to the Criminal Court of Appeals in such a proceeding was erroneous; that the Criminal Court of Appeals is a court of limited jurisdiction, limited to appeals from county and district courts of the state. In fact the admissions of erroneous statements in said letter and erroneous inferences from the language used are shown by the record to be too numerous to undertake to recite herein. This, briefly, is the situation of the respondent, and the painful question before the court is, What is its duty to the public by reason thereof?

Those learned in the law are permitted special privileges by the law itself. The privileges admissions to the bar carry are intended for the public good. Such are exercised as officers of the court. As such they are not in the same position in relation to the courts as persons who are not accorded these privileges. Part of the oath of an attorney (section 4095, C. O. S. 1921) is that he will act in the office of attorney in this court with all good fidelity to the court. The statute (section 4097, C. O. S. 1921) imposed upon him the duty to maintain respect to the courts and judicial officers and to abstain from all offensive personalities and to advance no fact (or alleged fact) prejudicial.

Under section 4106, the license of an attorney may be revoked for willful violation of his duties as such. We refer to these sections of the statute, but in doing so we do not desire to be understood as holding that the court is limited in disbarment proceedings such as here to causes set forth in the statute itself.

It is only by inference that we may glean from the evidence that the respondent wrote the instant letter for his client in a spirit of courting favor with the policy of his said client, as disclosed by this record, of publishing scurrilous matter about this court for hire and a continued policy of his client, found both in the news columns and the editorial columns, of making repeated assertions against individual members of this court, for reasons known by this court to have no basis in fact, but which articles had the sinister and insidious design of holding the members of this court up to public contumely and scorn.

We have been unable to find any other case where a member of the bar, under the setting as here, has permitted a letter, written by himself, to be published by his client,

a newspaper, in which was contained statements so numerous, having neither basis in fact nor in which the questions of law discussed found no justification in the authorities.

May it be understood that the members of this court as individuals have little concern in this proceeding as to what the respondent or his client had to say. The accusations made by respondent's client in substance and effect were sought to be substantiated before a special court, which court recessed from time to time for over three months for additional evidence, and resulted in its opinion filed May 21, 1927 (125 Okla. 51, 256 Pac. 667).

Undoubtedly the action of the respondent is in clear violation of his oath as an attorney and of the duties imposed upon him by the statutes of the state to which reference is made hereinabove. The breach of this oath and the violation of such duty are so malignant in the article published as unquestionably to drive this court to the conclusion that the respondent does not care to demean himself toward the courts of his state as the law which makes him an officer of the courts requires. A careful reading of the letter so published shows an inexcusable, unwarranted, and malignant attitude toward the courts, and if permitted to exist among any considerable number of the members of the bar would not only impede but destroy the administration of justice. The proper consideration of his duty as an officer of this court, under his peculiar relation to his client, the Tulsa Daily World, to say nothing of any respect for the ethics of his profession and the fact that he had been a witness for the respondent in a contempt proceeding in which the respondent was found guilty, precludes the making of any derogatory statement in private or in public, but he wrote the letter. If it was not intended for publication, at least he permitted it to be published by his client and circulated throughout the state.

The privileges which the law gives to members of the bar are most subversive of the public good, if the conduct of such member does not measure up to the requirements of the law itself, as well as to the ethics of the profession. Such is a matter of public concern, and our action herein is demanded by the law because thereof. This court cannot shut its eyes as officials to what the members for the time composing it know as individuals. To do so is subversive not only of the law but of the pub-

llc good, which alone justifies the existence of this court as an instrumentality of government and the usefulness of which to serve the public good would be by such conduct on the part of its members destroyed.

The right of free speech and free discussion as to judicial determinations is of prime importance under our system and ideals of government. No right thinking man would concede for a moment that the best interest to private citizens as well as to public officials, whether he labors in a judicial capacity or otherwise, would be served by denying this right of free speech to any individual. But such right does not have as its corollary that members of the bar, who are sworn to act honestly and honorably both with their clients and with the courts, where justice is administered, if administered at all, could ever properly serve their clients of the public good by designedly misstating facts or carelessly asserting the law. Truth and honesty of purpose by members of the bar in such discussion are necessary. The health of a municipality is none the less impaired by a polluted water supply than is the health of the thought of a community toward the judiciary by the filthy, wanton, and malignant misuse of members of the bar of the confidence the public, through its duly established courts, has reposed in them to deal with the affairs of the private individual, for the protection of whose rights he lends his strength and money to maintain the judiciary of his country. For such conduct on the part of the members of the bar the law itself demands retribution—not the court.

In the instant case the respondent through his counsel makes an apology. The respondent himself undertakes to say while on the witness stand that the inferences and statements contained in his letter were misunderstood. Both are half-hearted, and we conclude insincere. Even if they were sincere, this court would not be justified in excusing the pompous and complacent assertions contained in the published article which exists as to matters of fact and as to matters of law solely as the ipsi dixit conclusion of the writer himself, without regard, except for himself and for his client, to the unwarranted poisonous effect it had upon the public mind. However reluctant we are. we are driven to the conclusion that the article was written and caused to be published, both by the respondent and his client, with the intentional design of holding the highest judicial body in the state out to the public as subject to the scorn of all right thinking citizens. All this in violation of the oath of the respondent and the duty imposed upon him as an officer of the courts of the state. But this court is not unmindful that its authority to disbar should not be arbitrarily used even in the case where the facts disclose, as here, the gravest infraction of the duty of the attorney. There is no ironclad rule for determination of such matters. If we believe that the respondent would in any wise in the future undertake in private conversation or by published articles to mislead the public, both as to facts and law as to determination of any court, as the article here in question did, we should not hesitate to strike his name from the roll of attorneys unconditionally. But as members of this court, we feel that we can serve the public interest better by giving consideration to the pretended apology, as if made in good faith, and give a degree of consideration to the future of the respondent which, should we be in error as to his purpose and intent, might do him an injustice equally as grave as we believe he intended to do this court with the members of the public reading his letter. We refrain from doing that. We must consider that perhaps unthoughtedly he overlooked his duty and oath; failed to make an examination of the facts or law in his zeal to please his client, and mercy rather than retribution which the law demands should be extended him.

It is the order and judgment of this court that the respondent be suspended as an attorney and counselor at law, from the practice of law in the state of Oklahoma and before all the courts thereof, for a period of thirty days from this date, at the expiration of which time he shall automatically be reinstated.

HARRISON, PHELPS, LESTER, CLARK, and HEFNER, JJ., concur.

RILEY, J., not participating.

HUNT, J. Under all the facts and circumstances herein, and in view of the apology offered by respondent, I am of the opinion that proper reprimand, administered to respondent by the court, would be sufficient punishment herein, and, therefore, dissent as to the 30-day suspension imposed.

Note.—See under (1) 6 C. J. p. 594, §54; anno. 17 L. R. A. (N. S.) 572; 2 R. C. L. p. 1093; 1 R. C. L. Supp. p. 699. (2) 6 C. J. p. 578 §28 (Anno); p. 581, §37. (3) 6 C. J. p. 593, §54.