## Dixon v. Ward et al.

(Decided March 9, 1937.)

WHEELER & WHEELER for appellant.

W. J. WARD for appellees.

OPINION OF THE COURT BY JUDGE REES—Reversing.

This is an appeal from a judgment of the Johnson circuit court adjudging a lien for $550 upon a lot in Paintsville, Ky., now owned by the appellant, Rolla Dixon, and ordering the property sold to satisfy the lien.

The appellee Hebert Ward conveyed the property to W. L. Todd on September 4, 1920. The consideration named in the deed was $1,000, of which amount $50 was paid in cash and the balance was evidenced by two notes, one for $400, payable to G. C. Wells, and one for $550, payable to the grantor, Hebert Ward. A lien was retained in the deed to secure the payment of these notes. On November 8, 1920, W. L. Todd conveyed the lot to Elzie Trimble for the recited consideration of $1,000 cash paid. On the day this conveyance was made, Elzie Trimble paid the G. C. Wells $400 note, and the lien to secure its payment was released on the margin of the deed book. By mesne conveyances, the appellant, Rolla Dixon, finally became the owner of the lot. On September 26, 1932, Hebert Ward brought an action against W. L. Todd and Rolla Dixon, in which he sought a personal judgment against W. L. Todd for the amount of the note executed by Todd on September 4, 1920. He also asked that he be adjudged a lien on the lot, and that Dixon be required to answer and disclose his interest in the property. Dixon filed his motion to require the plaintiff to file the note sued upon, and the court sustained his motion to the extent that the plaintiff was ordered to file a copy of the note and to present the original note to Dixon's attorney for inspection. The plaintiff failed to comply with the order, and a rule was awarded against him to show cause why he had not filed a copy of the note sued upon. His response to the rule was deemed insufficient, and, when he again refused to file the note or a copy thereof, his petition was dismissed on Dixon's motion. He appealed to this court, but the appeal was dismissed because the record did not contain the order dismissing his petition. Ward v. Todd, 251 Ky. 356, 65 S. W. (2d) 74.

It appears that the original record was lost, and on March 2, 1934, an agreed order was entered substituting carbon copies of the lost pleadings for the originals. On March 12, 1934, Hebert Ward filed a second suit in the Johnson circuit court against W. L. Todd and Rolla Dixon, in which he asked that he be adjudged a lien on the property conveyed by him to W. L. Todd on September 4, 1920, and that the property be sold to satisfy his debt, interests, and costs. He proceeded against W. L. Todd as a nonresident, and, in his affidavit for a warning order, stated "that the defendant, W. L. Todd, is a nonresident of the State of Kentucky, and now resides in some other state other than the State of Kentucky, the name of which is unknown to plaintiff, and that he does not know his bona fide residence, or the post office nearest to where he resides." The record discloses that the defendant Rolla Dixon moved that the plaintiff, Hebert Ward, be required to elect which of the two suits he would prosecute, and the motion was sustained. Ward failed to elect, and, on June 16, 1934, Dixon renewed his motion to require the plaintiff to elect, and this motion was overruled. However, on November 21, 1934, on the plaintiff's own motion, the first suit was dismissed without prejudice. The defendant Dixon filed a motion to require the plaintiff to file the note sued upon in the second suit, and thereafter Shade Ward, a brother of the plaintiff, Hebert Ward, filed his petition asking to be made a party and alleging that the note in question had been assigned to him by Hebert Ward. He filed the note with his petition. In his answer, the defendant Dixon alleged that on November 8, 1920, W. L. Todd conveyed the lot described in the petition to Elzie Trimble, who assumed the payment of the $400 note to G. C. Wells and the $550 note to Hebert Ward, and that the said Elzie Trimble had paid the $400 note to G. C. Wells and the $550 note to Hebert Ward in full, and that the defendant was entitled to have recorded on the margin of the deed book a release of the lien retained showing that the consideration recited in the deed had been paid and satisfied in full. In an amended answer filed February 23, 1935, he alleged that the $550 note referred to in the deed from Hebert Ward to W. L. Todd had long since been paid by Elzie Trimble to the plaintiff, Hebert Ward, but that the note filed with Shade Ward's petition to be made a party was not the note

referred to in that deed, and had not been signed by W. L. Todd but was a forgery. On February 27, 1935, the plaintiffs filed a reply, denying that the note was a forgery, and, on the same day, Shade Ward filed an amended petition alleging that the original note filed with his petition to be made a party had been lost, and he tendered an indemnifying bond, as required by section 7 of the Civil Code of Practice. Proof was heard, and, on submission of the case, the circuit court adjudged that the note which had been filed and lost was the original note signed by W. L. Todd and had not been paid, and Shade Ward was adjudged a lien on the property described in the petition to secure the payment thereof, and the property was ordered sold. From that judgment, the defendant Rolla Dixon has appealed.

While this case was pending in the Johnson circuit court, disbarment proceedings were instituted against W. J. Ward, the attorney for the appellees herein and their father. One of the charges made in the disbarment case was the removal by him from the file of the note sued on in this case. The committee of the Bar Association, which heard the evidence on the charges preferred against W. J. Ward, recommended that he be disbarred, and that case is now pending in this court. Both parties to this appeal have requested in their briefs that the record in the disbarment proceeding be considered in connection with this record.

The only witness introduced by the appellees was their father and attorney, W. J. Ward. Neither Hebert Ward nor Shade Ward testified. The deposition of Elzie Trimble was taken January 25, 1935, and he testified that on or about November 8, 1920, W. L. Todd conveyed to him a lot in Bridgeford addition to the city of Paintsville, which had been conveyed to Todd by Hebert Ward on September 4, 1920. He paid Todd $50 in cash, and assumed the payment of a $400 note to G. C. Wells and a $550 note to Hebert Ward, to secure the payment of which a lien had been retained in the deed from Ward to Todd. He paid the Wells note, and the lien retained in the deed to secure its payment was released. He met W. J. Ward and offered to pay off the $550 note held by Hebert Ward if the latter would accept $500 cash. Ward refused to accept $500 in payment of the note, but on the follow-

ing day he accepted the offer and Trimble delivered to him his check for $500, payable to Hebert Ward. Something was said about releasing the lien, and W. J. Ward told him that he would have his son, Hebert Ward, make the release. Hebert Ward was working for the Louisville & Nashville Railroad Company and was not then in Paintsville. He stated that this was the only check he ever executed payable to Hebert Ward. The general bookkeeper of the First National Bank of Paintsville, of which Elzie Trimble was a depositor in 1920, testified that the records of the bank showed that on November 6, 1920, the sum of $500 was withdrawn by check from Elzie Trimble's account, and, on the same day, Hebert Ward's account was credited with a deposit of $500. The deposit slip showed that the check deposited on that day by Hebert Ward was the check of Elzie Trimble.

W. J. Ward's deposition was taken February 7, 1935, and he denied that Elzie Trimble delivered to him a check for $500 payable to Hebert Ward in November, 1920, or that he delivered to Trimble the Todd note. He stated that his sons were engaged in the business of buying and selling real estate at that time, and that he frequently transacted business for them. When asked why suit had not been instituted sooner for the collection of the note if it had not been paid, he answered: "Well, I don't recall just what. More than likely it was misplaced and just not, just left off is all the excuse I know about." He was later asked these questions and made these answers:

"Q. Did you have that note while the first suit was pending? A. Yes sir.

"Q. I believe you said awhile ago that the reason why the suit had not been filed the note was misplaced? A. While the suit was pending, the note we had it all the way through but just having so many papers, we have done an enormous business, real estate, and borrowing money and taking notes and executing notes, selling lots and taking purchase money notes on land and done an enormous lot of business along that line."

He testified that he had not seen W. L. Todd for many years, and did not know where he lived.

On February 11, 1935, four days after W. J. Ward

testified, the deposition of W. L. Todd was taken at the office of appellant's attorneys in Paintsville. Elzie Trimble had learned through a kinswoman of W. L. Todd that Todd was living on Coal river in West Virginia, about 200 miles from Paintsville. He drove to West Virginia in an automobile and returned with Mr. Todd to Paintsville on February 11, 1935. They arrived at Paintsville about 9 a. m. Todd testified that he left Johnson county, Ky., on November 15, 1920, and had never returned until the day his deposition was taken. Before he left Paintsville in 1920, he inquired concerning the note which he had executed to Hebert Ward, the payment of which Elzie Trimble had assumed, and Trimble exhibited to him the original note showing that it had been paid. When he arrived in Paintsville on the day his deposition was taken, he went to the grocery store of Williams Bros., and, while there, the file in the case of Ward v. Todd & Dixon was brought to the Williams store, and he was shown the note filed with the petition, purporting to be the original note executed by him to Hebert Ward on September 4, 1920. He testified that he examined the signature on the note, and it was not his signature. He saw the note and file shortly before noon, and, when his deposition was taken an hour or two later, the note had disappeared from the file.

The proof shows that the file, after being exhibited to Todd, was returned to the official stenographer and that it then contained the note. Shortly thereafter, at W. J. Ward's request, the stenographer delivered the file containing the note to him, and he took it to his office. About an hour later he took the file to the offices of the attorneys for the defendants, where the deposition of W. L. Todd was to be taken. It was discovered that the note was missing from the file. W. J. Ward admits that the note was in the file when the stenographer delivered it to him, and that he had it in the office during the noon hour, but he is unable to account for its disappearance. Ward stated that he was away from his office during the noon hour, and it is suggested that Elzie Trimble may have entered his office and removed the note from the file. There is no proof, however, that Trimble was seen at or about his office, or that he knew that Ward had the note in his possession. After Ward went to the office of defend-

ant's attorneys to attend the taking of the depositions, he left the file on a table and went to the clerk's office to obtain a summons for W. L. Todd in the pending action. He returned in a few minutes with the deputy sheriff, and the summons was served on Todd. In his cross-examination of Todd, after it was learned that the note had disappeared, there was a veiled suggestion that the file might have been tampered with while he was absent at the clerk's office. There were six people in the office while Ward was away, including the official stenographer, and it was shown the file was not touched during that time, and that the absence of the note was not discovered until after his return.

The case was submitted on July 16, 1935. On December 2, 1935, two days before the judgment was rendered, the plaintiffs tendered and offered to file an affidavit signed by W. L. Todd and sworn to by him before a notary public of West Virginia on October 23, 1935. The affidavit disclosed that W. J. Ward had gone to Todd's home in West Virginia on October 13, 1935. That part of the affidavit which it is claimed repudiates the positive testimony theretofore given by Todd reads:

"That when this affiant went to leave Paintsville, and the State of Kentucky, he met Elzie Trimble on the street in Paintsville, and inquired of him if he had paid said indebtedness, and Elzie Trimble remarked, 'What's the matter, what's the matter, you getting afraid of me, are you afraid I won't pay it,' and he reached in his pocket and took out a note and handed it to this affiant but I did not scrutinize it sufficient to know whether or not that that was the same note that I had executed to Hebert Ward, or not, and I have never paid to Hebert Ward or W. J. Ward said note or any part thereof; that I left Kentucky, and I had not heard from the matter until Elzie Trimble came to my home here at Orgas and claimed that W. J. Ward had lost the original note and asked me if I would go to Paintsville and look at the note; they told him that they would pay him for his trip and I told him that I would go. Elzie Trimble went away, and later on returned and I went to Paintsville with Elzie and Elzie taken him first to the Wholesale House of Williams Grocery Company

and while there he brought some papers with the note fastened to them with an open paper clip, and that I did not have this note in my hands, or any note in my hands, and Elzie only held up a note in front of me, which in my judgment I did not sign; then Elzie Trimble taken me to the law office of Wheeler & Wheeler and I stayed there for sometime in their law office, and at the noon hour W. J. Ward came in with the file and turned it over to Mr. M. O. Wheeler and they started to take my deposition, and they discovered that the note was missing, Mr. M. O. Wheeler and W. J. Ward made a thorough search of the record for the note and it was not in said record.''

The trial judge did not permit this affidavit to be filed, yet he refers to it in his opinion, and states that it destroyed the whole effect of Todd's deposition and completely discredits every statement he made therein. We do not so construe it. He still maintains that he did not sign the note shown to him on the day his deposition was taken, but in his affidavit he intimates that he entertains a doubt as to whether or not the note exhibited to him on the occasion was the same note which had been filed with Shade Ward's intervening petition. The evidence conclusively shows, however, that the note exhibited to him was the identical one filed with the intervening petition and purporting to be the original note.

Some point is made of the fact that the $500 transaction at the bank between Trimble and Hebert Ward occurred on November 6, 1920, and that the deed from Todd to Trimble was executed November 8, 1920. It is argued that the transaction with W. J. Ward related by Trimble must have occurred on or after November 8, 1920, and that therefore the check for $500 from Trimble to Hebert Ward, which passed through the bank on November 6, 1920, could have had nothing to do with the payment of the Todd note. The evidence on this point is strangly silent. No effort was made by either party to explain the apparent discrepancy. However, it may be that the respective transactions occurred on the dates stated. Trimble might have purchased the note while he was negotiating for the sale of the lot, and the fact that he obtained it at a discount might have been an inducement to the closing of the transac-

tion with Todd. Hebert Ward was not introduced as a witness to explain the $500 transaction, or to deny that the note had been paid. In the disbarment proceeding, a reputable attorney of Paintsville testified that Hebert Ward told him that he believed the note had been paid. A careful consideration of the record convinces us that the note had been paid, and that the court erred in rendering judgment for the appellees.

Wherefore the judgment is reversed, with directions to enter a judgment in conformity herewith.