# Commonwealth ex rel. Buckingham et al. v. Ward.

(Decided March 9, 1937.)

BEVERLY M. VINCENT, Attorney General, and J. J. LEARY, Assistant Attorney General, for complainants.

W. J. WARD for respondent.

OPINION OF THE COURT BY JUDGE REES—Reprimanding for professional misconduct.

This is a proceeding to review the findings and an order of recommendation of the Board of Commissioners of the Kentucky State Bar Association that respondent, W. J. Ward, be disbarred from the practice of law.

The respondent is county attorney of Johnson county. On February 4, 1935, C. Buckingham and J. W. Caudill filed a complaint against him with the Board of Commissioners of the State Bar Association, in which they charged him with the commission of numerous offenses calling for disciplinary action, and they asked that the charges set out in the complaint be investigated and that the respondent be disbarred. The proceeding was in accordance with the rules promulgated by the Court of Appeals establishing practice and procedure for disciplining, suspending, and disbarring attorneys at law which were adopted following the enactment of chapter 3 of the Acts of 1934, now sections 101-1 and 101-2 of the Kentucky Statutes. The right of the court to establish rules of practice and procedure for disciplining attorneys was upheld in Com. v. Harrington, 266 Ky. 41, 98 S. W. (2d) 53, 60, and In re Sparks, 267 Ky. 93, 101 S. W. (2d) 194. The complaint filed with the Board of Commissioners contained fifteen charges of misconduct on the part of the respondent. The Board of Bar Commissioners appointed two of its members as a trial committee for the purpose of investigating the charges, and, after the committee submitted a written report to the board, the matter was heard by the full board, which sustained the charge referred to as the "Todd Note Case," and recommended that the respondent be disbarred. Six of the charges were not considered by the board because the alleged offenses had been committed more than five years before the complaint was filed. Other charges were dismissed because the evidence was not sufficient to sustain them.

The charge which was sustained grew out of respondent's conduct as the attorney for his sons, Hebert Ward and Shade Ward, in a suit instituted in the Johnson circuit court by Hebert Ward against W. L. Todd and Rolla Dixon. The suit was on a note for $550, executed by W. L. Todd to Hebert Ward for a part of

the unpaid purchase price of a lot conveyed by Ward to Todd on September 4, 1920. Rolla Dixon was the owner of the lot when the suit was instituted on September 2, 1932, to have it sold to satisfy the lien retained in the deed from Hebert Ward to W. L. Todd to secure the payment of the $550 note. Todd conveyed the lot to Elzie Trimble on November 8, 1920, and Trimble assumed the payment of the note in question and also a note for $400, payable to G. C. Wells. Trimble testified that at or about the time the land was conveyed to him he gave to the respondent, W. J. Ward, father of Hebert Ward, a check for $500, payable to Hebert Ward, and that W. J. Ward delivered to him the note marked, "Paid." He kept the note for some time, and showed it to W. L. Todd before the latter moved to West Virginia. M. O. Wheeler, an attorney at law of Paintsville, testified that many years after the sale of the lot to Trimble he examined the title to it for Rolla Dixon, a prospective purchaser, and found that the lien retained in the deed executed to W. L. Todd by Hebert Ward on September 4, 1920, to secure the payment of the $550 note, had not been released. He asked Hebert Ward about it, and his testimony as to what occurred on that occasion follows:

"I talked to Hebert Ward in the Court House square and asked him about it and he said he felt sure it had been paid and we came to the office to release it and Mr. Ward (respondent) came in and as I remember his conversation he said during this time he did quite a bit of trading and he was not sure whether it was paid or not, and sometime after that suit was instituted by Hebert Ward by W. J. Ward attorney for Hebert Ward to collect this five hundred and fifty dollar note, and asked that a lien be adjudged against the property to secure the payment."

In the action of Hebert Ward v. W. L. Todd and Rolla Dixon, the plaintiff, through his attorney, W. J. Ward, repeatedly refused to comply with an order of the court to file the $550 note. After more than two years had elapsed and a second suit had been filed, the note was filed with an intervening petition of Shade Ward, a brother of Hebert Ward. On the day the deposition of W. L. Todd was to be taken at the offices of Wheeler & Wheeler, attorneys for Dixon, the note dis-

appeared from the file after it had been examined by Todd and before he testified. The note disappeared from the file while the latter was in the possession of respondent. The material facts of the findings of the trial committee of the Bar Association on this point follow:

"Trimble also testifies that on the day that Todd came to Paintsville to give his deposition in this second suit that he (Trimble) and Todd examined the note filed with the Shade Ward intervening petition and that it was not marked 'paid,' as the original $550.00 note had been marked when he paid it and took it up in 1920. That when Trimble last saw the note sued on that morning it was in the hands of Mr. Wheeler, who was preparing to take Todd's deposition.

"Mr. Wheeler testifies that on that date he got the court file in the case from Mrs. Theo Wells, a stenographer, examined the note in company with Trimble and Todd, and before lunch took it back to Mrs. Wells at her office in the Court House. That about noon he returned to Mrs. Wells' office and found respondent with the court file, dictating from it with the note before him, to the stenographer; that Mr. Wheeler understood she was making a copy of the note for Ward, and that he then agreed with Ward to take depositions at Wheeler's office at one o'clock, at which hour Ward appeared with the Court file. When they started to take Todd's deposition, presumably for the purpose of his denying the signature as being his, it developed that the note had disappeared during the lunch hour, between the time Ward had been copying it in Mrs. Wells' office and his bringing the file to Wheeler's office at 1:00 P. M. Mr. Wheeler also stated that in agreeing to take depositions he did not tell respondent what witnesses he would take, so that there is no affirmative proof that Ward, before 1:00 P. M. knew that Todd was in town.

"Mrs. Wells states that after she copied the note for Ward about noon, she gave the court file, with the note in it, to Ward who took it from her office.

"Testifying in his own behalf, Ward admits

having the file in his possession during the lunch hour during which the proof conclusively shows the note sued on was taken from the file, and accounts for its disappearance only by the explanation that he left the file in his law office, with the note in it, and went out to lunch, returning in time to get the file and take it to Wheeler's office at one o'clock, that he left his office unlocked as was his custom, and undertakes to cast suspicion on Trimble by saying he was in town that day and knew of Ward's custom of leaving the office unlocked. However, as it is not claimed that Trimble knew, or had reason to believe, that Ward had possession of the Court file during the lunch hour, or had taken it to his office, there is no reason to assume that Trimble would have known where to go to abstract the note, even if willing to do so, of which there is no proof in the record on which an inference that he would do so might be based. While the admitted circumstances point directly to respondent, as being the man who had the file in his possession when the note disappeared and who also had a motive for disposing of it before it could be examined by any of the witnesses at one o'clock who might prove it to be a forgery, it is not necessary to base our findings on that ground alone. From the entire evidence as reviewed above, and further evidence in the record which the Board should read for themselves, we are of the opinion that Trimble paid this note to respondent, that the note was delivered to him marked 'paid' in 1920, and that the respondent knew this; that his subsequent filing of suit in Hebert Ward's name, his resistance to the rule to file the note in that suit, and his filing of the second suit in Hebert's name without there filing it, followed by the filing of a purported note with the intervening petition of his son Shade Ward, alleging it to have been transferred to him, point unmistakably to the conclusion that by these suits he was attempting to force payment a second time of the $550.00 note which he knew had already been paid. We, therefore, are of the opinion that the charge of misconduct as to this count has been sustained.''

The testimony before the trial committee on the

charge in the Todd Note Case was substantially the same as the testimony in the case of Hebert Ward v. Todd and Dixon, except it was more in detail. The facts developed in the case of Ward v. Todd and Dixon are stated in the opinion this day rendered in the case of Dixon v. Ward, appealed from the Johnson circuit court, and for a fuller statement of the facts reference is made to that opinion. Dixon v. Ward, 267 Ky. 619, 103 S. W. (2d) 113. On the hearing before the full Board of Commissioners of the State Bar Association, the finding of facts of the trial committee in the Todd Note Case was approved, and the board recommended that respondent be disbarred. This proceeding is civil and not criminal in character, and it follows that cause for disbarment may be established by a fair preponderance of the evidence as in other civil causes, and that proof beyond reasonable doubt, as in criminal cases, is not required. In re McDonald, 157 Ky. 92, 162 S. W. 566. The preponderance of the evidence supports the board's finding, although respondent strenuously denied that he had anything to do with the disappearance of the note.

The offense charged is a serious one, and an attorney guilty of such grievous misconduct should be disbarred. Abstracting a paper from a court file constitutes unprofessional conduct in the highest degree. It is a fraud upon the court, as well as the opposing party. The facts disclosed by the record before us are sufficient to warrant the inference that respondent was guilty of such professional misconduct as would constitute a cause for disbarment, but, under the peculiar facts of this case, we think he should be given the benefit of any doubt and that such an extreme penalty should not be inflicted. But, even if the evidence in the Todd Note Case is not sufficient to authorize disbarment, it shows conduct unbecoming a member of the legal profession and deserving censure. Likewise, the evidence on other charges preferred against respondent, while probably insufficient to authorize a judgment of suspension or disbarment, yet was sufficient to show that respondent, as an attorney, had been guilty of misconduct which cannot be wholly condoned. The trial committee made the following recommendation:

"In view of the serious nature of the charge

which has been sustsained, but giving respondent the benefit of any possible doubt which may exist, your Committee would not recommend permanent disbarment but would recommend a substantial period of suspension. However, in view of the qualified recommendations made in the Harrington case, by reason of the latter's having four years of his term as Commonwealth's Attorney, we have considered here that the respondent Ward also has two more years to serve as County Attorney, which office he might forfeit if suspended generally. But for this situation, your Committee would recommend suspension for not less than one year. If a general suspension would forfeit his office, and it can lawfully be imposed, we would recommend suspension for that period from all practice of law other than the duties of his office to which elected."

The full board, as heretofore stated, recommended that he be disbarred.

As has been observed, the respondent is county attorney of Johnson county. Undoubtedly, a judgment of disbarment or suspension would work a forfeiture of the office. Com. v. Stump, 247 Ky. 589, 57 S. W. (2d) 524; Com. v. Harrington, supra. It is clear from the record that this proceeding had its inception in the ill feeling existing between respondent and J. L. Harrington, commonwealth's attorney for the Twenty-Fourth judicial district. The complaint was filed by two magistrates of Johnson county who were hostile to respondent but friendly to Harrington, and the latter undoubtedly induced them to file the charges after Ward had filed a complaint against Harrington with the Board of Bar Commissioners. In Com. ex rel. Ward v. Harrington, supra, we said:

"Perhaps the violations to which we have referred—the establishment of which we entertain no doubt—would ordinarily merit at least a suspension of respondent's right to practice law, but we are convinced that such a corrective penalty would also suspend his right to continue to exercise the functions and to perform the duties of his office of commonwealth's attorney of his judicial district. That consequence would not only affect him, but it would likewise deprive the people of his district to have the one perform those duties whom

they had selected for that purpose. Everything considered, we have concluded that the mildest corrective remedy to apply would be—that respondent be censured for the violations of which he is found guilty.''

A careful consideration of the entire record convinces us that respondent was guilty at least of conduct constituting a violation of professional ethics. We are also convinced that the prosecution has not been actuated entirely by worthy motives. In view of that fact, we deem it our duty to be doubly diligent in seeing that no injustice is done. With that end in view, we confine the punishment of the respondent to a reprimand. It is therefore the order of this court that respondent should be, and he is hereby, reprimanded.

The whole court sitting.