**KENTUCKY STATE BAR ASSOCIATION,**
Complainant,

v.

**Jesse K. LEWIS, Lexington, Kentucky,**
Respondent.

**KENTUCKY STATE BAR ASSOCIATION,**
Complainant,

v.

**Burnis MARTIN, Prestonsburg, Kentucky,**
Respondent.

Special Court of Appeals of Kentucky

Appointed by the Governor.

July 14, 1955.

Charles F. Wood, Louisville, for complainant.

Hubert Meredith, Greenville, for respondents.

## PER CURIAM.

These are disciplinary actions brought by the Kentucky State Board of Bar Commissioners against the Respondents, Jesse K. Lewis and Burnis Martin. The cases were tried separately by the Trial Committee of the Bar Board, but they were briefed together and argued together, and we will dispose of them in one opinion. The Bar Board recommended a six months suspension in each case.

These cases grew out of some litigation in Floyd County. The respondent, Martin, was an active member of the Good Government Taxpayers' League, Inc. In the autumn of 1952 the Taxpayers' League employed the respondent, Lewis, to file suits against various county officials for the misapplication and misappropriation of public funds.

The Complaint against Lewis is based on an affidavit which he prepared and caused to be filed in support of a motion to require Special Judge Lawrence Grauman to vacate the bench. The Complaint against Martin is based upon a newspaper advertisement which he caused to be published in the Floyd County Times, at Prestonsburg.

Five suits were filed by Lewis in October of 1952, and the Regular Circuit Judge disqualified himself. The Hon. Lawrence Speckman, former Circuit Judge of the Chancery Branch in Jefferson County, was appointed to try those cases. Some time in the early part of 1953, Mr. Lewis filed five additional cases of the same character, and in May of 1953 he filed nine more suits of the same character. All these actions were either in the name of the Taxpayers' League, or brought by active members of it.

It is not clear by whom or when, but sometime in the early part of 1953 a suit apparently of the same or similar character, was brought against the Respondent Martin.

Some of the plaintiffs in these suits were candidates for public office, subject to the August primary of 1953. They were running against some of the defendants who were incumbent officials.

Judge Speckman was in the process of trying, by depositions, the first five cases, when the second group of cases was filed. Two of the defendants in the second group of cases expressed a desire to Judge Combs, then a member of the Regular Court of Appeals, and a resident of Prestonsburg, county seat of Floyd County, for a speedy trial, so that the charges against them could be disposed of prior to the August Primary. Some of them also contacted Mr. Henry Harned, then Administrative Director of the Kentucky Court of Appeals. Judge Combs and Mr. Harned relayed this information to Judge Porter Sims, then Chief Justice. Judge Sims contacted Judge Speckman who did not feel that he had time to hear the cases orally because at that time he was sitting as special judge in the Hardin Circuit Court and could not give so much time from his private practice. He agreed to go to Prestonsburg and hold a conference to determine if he could spare the time for an oral hearing, and if he could not, he agreed to resign in the new cases so that another Judge could be designated.

Judge Speckman held the conference suggested by Judge Sims on April 4, 1953, at Prestonsburg. Following that conference the attorneys for defendants wrote Judge Sims, requesting that a Judge who could grant an oral hearing be appointed. Lewis, upon receipt of a copy of that letter wrote Judge Sims strongly opposing a change in Judges and oral hearings. Judge Speckman returned to Louisville, resigned his commission on the ground that he could not grant an oral hearing. Judge Sims then

appointed Judge Lawrence Grauman, a regular Judge of the Jefferson Circuit Court.

Judge Grauman proceeded to Prestonsburg on April 20th to try the preliminary questions raised by defendants in the second five cases. No objection was made to Judge Grauman's appointment or to his hearing of the cases orally. During that week Judge Grauman disposed of the five cases, ruling adversely to Lewis in four of them, and favorably in one. The four adverse rulings were directly opposite to the way Judge Speckman had ruled on the same or similar questions in the first five cases. He dictated his opinion to the reporter in open court, during which he commended Lewis' ability as an attorney. On April 23rd of that week Martin's advertisement appeared in the paper.

When Lewis filed the last nine cases, Judge Grauman was again designated Special Judge to try them. No objection was made to his appointment at the time. He had difficulty however in finding a date for the trial of these cases which suited all the lawyers, and himself. He finally fixed June 29th as the day to commence the trials. This date did not suit Lewis who had made arrangements to be in Portland, Oregon, to attend a church conference. Lewis expected to be gone about a month. Lewis and all other attorneys were duly notified.

When Judge Grauman opened Court on the 29th of June, Lewis was not present, and no one appeared in his stead on behalf of his clients. The Circuit Clerk handed Judge Grauman an affidavit on which the complaint in this action is based, saying that it had been filed with him by some one.

The affidavit is much too long to be reproduced in full. It charges essentially that Chief Justice Sims, Judge Grauman and unnamed political bosses of Frankfort and Louisville and the defendants in those cases were parties to a corrupt political arrangement by which Judge Grauman was directed how to decide the litigation in Floyd County.

We quote two sentences which are fair samples of the charges contained in the affidavit.

"That thereupon the defendants and their attorneys left the courthouse and went to their offices and prepared and forwarded to the Chief Justice of the Court of Appeals of Kentucky a letter requesting him in effect to give them the political relief which they so badly needed; that thereafter and by reason of Judge Speckman's oral ruling as above set out the defendant and appellee, Troy B. Sturgill, A. B. Meade, and other named defendants by reason of their political links and secret contacts in Frankfort, with said political machine and bosses, brought sufficient pressure upon the Chief Justice of the Court of Appeals to have him to force Judge Speckman to resign in the above cases and to appoint Hon. Lawrence Grauman, Circuit Judge of Louisville, Kentucky in his place, the said Grauman being a part and connected with the aforesaid political organization and machine of Jefferson County which had selected, nominated and helped elect him Circuit Judge in Jefferson County and to which political organization he was obligated for his election; that by reason of said political connections and the various links and connections, economic, political and otherwise, the said Special Judge, Lawrence Grauman, was advised and informed by the political bosses at Frankfort how to decide these cases even before he came to Prestonsburg."

And again: "Pursuant to his instructions to render a political decision in favor of the said defendants and appellees, and in order to save them from the political consequences of their misapplication and misappropriation of public funds as charged in the aforesaid suits, and in order to help bring about their renomination and re-election for the purpose of saving the political machine of which they had control in Floyd County for the use and advantage of said political machine which they were a part, the said Special Judge, after stronger and undisputed evidence of collusion and fraud

on the part of said defendants had been presented to him than had been presented to Judge Speckman in the cases being tried by Judge Speckman as aforesaid, the said Grauman dictated an oral opinion in which he in effect criticized Judge Speckman's ruling and in effect overruled it and wherein he held that the citizens and taxpayers were without legal right to maintain said suits assigned to him for trial."

Respondent, Lewis, admits that he prepared the affidavit, that he caused it to be filed. He insists that he believed, and had a right to believe the charges were true, and that he had the right to rely upon the affidavit of his clients. As an additional ground for reversal he claims that the burden of proof was improperly assigned to him by the Trial Committee and that this violated his constitutional rights under the Fifth and Fourteenth Amendments to the U. S. Constitution.

■ We think the burden of proof was properly assigned to the respondent. The preparation and filing of the affidavit were admitted. It was in evidence as an exhibit to the Complaint. There was nothing left for plaintiff to prove. A prima facie case having been made the burden then was upon respondent.

See 7 C.J.S., Attorney and Client, § 33, p. 781.

Likewise we see no merit in the claim that respondents' constitutional rights were violated. He cites two cases in support of this claim. Norris v. State of Alabama, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074, and Smith v. State of Texas, 233 U.S. 630, 34 S.Ct. 681, 58 L.Ed. 1129. Neither case is authority for the argument made.

The affidavit filed is the most scurrilous and contemptuous we have ever read in the great many cases we have studied. It contains the basest charges of judicial corruption and political control of the Courts. These charges are based on innuendo and inference. If they are to be believed, as respondent says he in good faith did believe them, then the Court of Appeals of Kentucky is not a safe place for citizens to entrust their litigation, and regularly elected Circuit Judges who are appointed as Special Judges outside their districts by the Chief Justice are suspect. If the charges were true then disciplinary action should have been taken against Judge Sims and Judge Grauman.

■ We are fully cognizant of the duties owed to his client by the attorney. He is bound to use every legitimate means and maneuver to protect the interests of his clients, and to obtain for them a fair trial. He should be zealous in his advocacy of his clients' rights. On the other hand he has a duty to the Court of which he is an officer. He is bound to be respectful and courteous. He owes it to himself as an attorney, to his profession, and to the Court to help maintain the dignity and decorum of the Court, and thus maintain the respect of the people for judicial processes.

■ Respondent claims that he had a right to rely upon the sworn statements contained in the affidavit which he prepared and his clients executed; that he, in good faith, believed those statements. We think more than that is required of him. We believe that where he makes charges of judicial corruption such as he made here, the attorney must be prepared to introduce substantial competent evidence in support of those charges. He must be prepared to do this in order to prove his good faith.

Lewis v. Rice, Ky., 261 S.W.2d 804.

Lewis failed to measure up to this standard. He asserts that a great portion of the affidavit was based on his personal knowledge of the political situation in Floyd County, Jefferson County and Frankfort, and the remainder upon a letter signed by typewriter only, on the professional stationery of the respondent, Burnis Martin. The typed signatures were those of his clients. He conferred with no person, except Martin, about the preparation of the affidavit, and what it should contain. In his defense of this action he did not call as

witnesses any of his clients who swore to the affidavit. The Board of Bar Commissioners unanimously found the charges made in this affidavit were false and we fail to see how they could have found otherwise.

There can be no doubt about the Court's power, or its duty, to take disciplinary action against an attorney when he has engaged in grossly contemptuous action. See In re Woolley, 11 Bush 95, 74 Ky. 95. This is one of the leading cases in American Jurisprudence on the subject. See the cases collected and annotated under State ex rel. Dabney v. Breckenridge, 126 Okl. 86, 258 P. 744, 53 A.L.R. 1244. The contemptuous matter contained in Woolley's petition for a re-hearing is certainly mild as compared with the charges in the instant affidavit.

The Respondent, Jess K. Lewis, will be suspended from the practice of law for a period of six months.

### The Burnis Martin Case

The respondent, Burnis Martin, is the duly elected Commonwealth's Attorney in the thirty-first judicial district, which consists of Floyd County. On Thursday, April 23rd the fourth day after Judge Grauman commenced the trial of the second five cases, an advertisement, four columns wide and eighteen inches high, appeared in the Floyd County Times, the local newspaper at Prestonsburg. Martin's picture appears in the upper left hand corner of the advertisement, and to its right appears in bold head lines, "Martin stands alone at the court house".

In the first half of the advertisement Martin refers to five men, namely, Henry Stumbo, Woodrow Burchett, Ellis Martin, Milt Stanley, Banner Meade. Thereafter those named were referred to simply as "They" or "these men". The advertisement speaks of rumors of his murder, impeachment, disbarment and of smearing law suits to be filed against him. The inference is inescapable that "these men" were at the bottom of such expected action.

The following is the language on which the Complaint is based:

"It appears that these men through their political links and secret contacts have brought pressure to bear upon the Chief Justice of the Court of Appeals to force the Hon. Lawrence F. Speckman, Judge out of the last five tax-payers cases, after he was appointed, qualified, came to Prestonsburg, and after he had held hearings in the cases, and even after he had told the 'Court-house' defendants that he wanted to try the cases, and told these men that he would resign, only if the Chief Justice forced him to. Under what law or authority does a Chief Justice have the right to dictate to a Circuit Judge on a procedural matter in a Circuit Court?

"They have fired the honest judge. They have discharged the elected commonwealth's attorney over his protests. And only God knows what they will do next."

We think that the readers of this paper would conclude from this article that Martin believed or knew that "these men" could control the Chief Justice of the Court of Appeals of Kentucky. We can think of nothing more calculated to destroy the faith of the people in their Courts than the statements contained in the article. It creates the impression that the Chief Justice of our highest court is under the control of the people who would murder to obtain their ends. The evidence shows that the Chief Justice was not even acquainted with any of "these men".

### "They have fired the honest judge."

It seems to us that if the article was believed, the reader would conclude that "these men", having the power to control the Chief Justice, to fire the honest judge, and the desire to murder, would certainly have the power and the desire to see that a corrupt judge was appointed to succeed the honest judge. The people of Prestonsburg and Floyd County, being unacquainted

with Judge Grauman, must have looked upon him with a jaundiced eye.

Freedom of speech is not a license. It is a right or a privilege constitutionally guaranteed, but he who uses it as a license to degrade another does so at his peril. He must be prepared to prove the truth of his charges. Of course any attorney, as well as any other citizen has the right to criticize the Courts and their decisions, but the publication of false and scurrilous matters subjects them to disciplinary action. Thatcher v. United States, 6 Cir., 212 F. 801; State ex rel. Dabney v. Breckenridge, supra, 126 Okl. 86, 258 P. 744, 53 A.L.R. 1239; Snyder's Case, 301 Pa. 276, 152 A. 33, 76 A.L.R. 666.

The right of the Court to establish rules of practice and procedure for disciplining attorneys is clear, Commonwealth ex rel. Ward v. Harrington, 266 Ky. 41, 98 S.W.2d 53; In re Sparks, 267 Ky. 93, 101 S.W.2d 194, and the fact that the offending attorney holds an elective office is no conclusive reason for not suspending or disbarring him. Commonwealth ex rel. Pike County Bar Ass'n v. Stump, 247 Ky. 589, 57 S.W.2d 524.

In view of the Court's ruling in the Harrington case, supra, and Commonwealth ex rel. Buckingham v. Ward, 267 Ky. 627, 103 S.W.2d 117, we feel that the punishment to the respondent, Burnis Martin, should be limited to a suspension of his right to practice law for a period of six months, but that such suspension shall not apply to the performance of his official duties as Commonwealth's Attorney.

The respondent strenuously insists that this case should be remanded to another trial committee, in effect that he be given a new trial. A sufficient answer to this contention is that respondent has not made any showing to this Court that he would or could produce any witness who would testify to any fact that would be calculated to change the finding of the Board of Bar Commissioners in the event the case should be referred back to that Board. It is elementary that in order to be entitled to a rehearing of any decided matter the movant must show the Court not only that he can produce witnesses who were not heard before, but that the effect of the testimony of such witnesses would reasonably be calculated to bring about a different decision. This the respondent has wholly failed to do.

All lawyers are dissatisfied whenever they lose any contention that they believe is correct.

By immemorial usage, the courts, and the public, expect an expression of such disapproval from the disappointed lawyer.

But every lawyer, worthy of respect, realizes that public confidence in our courts is the cornerstone of our governmental structure, and will refrain from unjustified attack on the character of the judges, while recognizing the duty to denounce and expose a corrupt or dishonest judge.

In this case the defendant caused to be printed and published charges of political favoritism and corruption against honorable and distinguished judges, without any real effort to investigate the facts, and without a scintilla of evidence to support them.

It is, therefore, adjudged that the recommendations of the Board of Bar Commissioners are hereby adopted and approved in each case with the exception that the suspension of the Respondent, Burnis Martin, shall not apply to his official duties as Commonwealth's Attorney.

The regular members of the Court of Appeals having declined to sit in these cases, that fact was certified to his Excellency, Lawrence W. Wetherby, Governor of the Commonwealth, who thereupon appointed and commissioned as Special Judges of the Court of Appeals to hear the appeals in these cases, the following practicing attorneys of the State: Pat Rankin, Chief Justice; Neville Moore, Paul Basham, Louis Reuscher, Bernard Davis, William J. Baird, and Robert P. Hobson.