WHITSITT *v.* BAR RULES COMMITTEE.

5-317                                                    269 S. W. 2d 699

Opinion delivered June 21, 1954.

*L. V. Rhine* and *Carl L. Hunter,* for appellant.

*Fred M. Pickens, Jr.,* for appellee.

PER CURIAM.   This is an appeal by Horace W. Whitsitt from a Circuit Court judgment permanently disbarring him as an attorney.

After investigation and hearing—at which Mr. Whitsitt appeared—the Bar Rules Committee,[1] filed complaint

---

[1] At the General Election in 1938, the People of Arkansas adopted Constitutional Amendment No. 28, which reads: "The Supreme Court shall make rules regulating the practice of law and the professional conduct of attorneys at law." Pursuant to that Amendment, this Court, by order of April 24, 1939, adopted the Canons of Ethics of the American Bar Association as the standard of professional conduct of attorneys at law. By the same order, this Court also established a Bar Rules Committee, with power and duty, *inter alia,* to investigate all complaints involving professional misconduct of attorneys, and upon finding reasonable grounds, to file complaint in circuit or chancery court against any offending attorney. To the credit of the high ethical conduct of the Bar of this State, it should be noted that since 1939 only three contested cases of disbarment have resulted in formal opinions of this Court. See *Hurst* v. *Bar Rules Committee,* 202 Ark. 1101, 155 S. W. 2d 697; *Bar Rules Committee* v. *Richardson,* 202 Ark. 417, 150 S. W. 2d 953; and *Armitage* v. *Bar Rules Committee, ante* page 465, 266 S. W. 2d 818 (opinion of April 12, 1954). There have been other cases of uncontested disbarment, but only the three mentioned have resulted in formal opinions.

against Mr. Whitsitt, charging him with four specific acts of professional misconduct, being designated as (1) the Jackson case in 1951; (2) the Scott case in 1951; (3) the Wilson case in 1950, and (4) the Horn case in 1948. Circuit Judge GUY AMSLER tried the case on exchange of circuits. The hearing began on November 7, 1952, and continued for two days. Then Mr. Whitsitt's rebuttal witnesses were heard on February 14, 1953; and the Circuit Court's opinion and judgment were delivered on June 13, 1953. The record is voluminous, consisting of more than 568 pages. We copy and adopt as our own the opinion of the Circuit Judge.

JUDGE GUY AMSLER'S FINDINGS, CONCLUSIONS
AND JUDGMENT

## STATEMENT

On the 5th day of April, 1952, the Bar Rules Committee of the State of Arkansas filed a complaint in the Circuit Court of Greene County, Arkansas, charging Horace W. Whitsitt with gross unprofessional conduct in the practice of law as follows:

"On September 8, 1951, C. A. Jackson, aged 73, of Greene County, Arkansas, was arrested and charged with the crime of rape of a 5-year-old girl, and shortly thereafter his son-in-law, Rev. Glen Thompson of Paragould, employed Defendant Horace W. Whitsitt to represent him. A fee of $150 was paid Defendant Whitsitt by C. A. Jackson's son, Rev. Gayle Jackson of Sikeston, Missouri, to cover services of the preliminary hearing, which was waived on September 14, 1951. On September 25, Rev. Gayle Jackson discussed his father's case at Paragould with Defendant Whitsitt, who told him that there was grave danger of his father being sent to the electric chair but that for a fee of $2,500 or $3,000 he thought he could save him. Defendant Whitsitt demanded $1,000 cash which Rev. Jackson paid in cash, with the amount of the balance of the fee to be determined later. At the request of Defendant Whitsitt, Rev. Jackson met him in Hayti,

Missouri, on September 30, 1951, to discuss the balance of the fee, and was told to bring $1,000 cash and a check for $1,000. Defendant Whitsitt again emphasized the seriousness of the case, the danger of the electric chair, and attempted to minimize the fee with suggestions of unethical expenses on his part of at least $1,500 in making contacts through high officials to bring influence on the outcome of the case, to bribe jurors, paying off the proper persons, and in having the child's mother as prosecuting witness leave the State. Rev. Jackson was told to come alone to the office of Defendant Whitsitt with the money the following day. On October 1, 1951, Rev. Jackson paid $1,000 in cash and also a check for $1,000 to Defendant Whitsitt at the latter's office, and signed a contract reciting a consideration of only '$1,000' as full payment of all attorney's fees for the complete representation of C. A. Jackson, with no additional fees except in the event of a mistrial and retrial of the charges.

"Having obtained the consent of Rev. Jackson for his father to plead guilty to the lesser charge of assault with intent to rape and to accept a penitentiary sentence, Defendant Whitsitt entered into an agreement on November 16, 1951, with the Prosecuting Attorney to so plead, which was recommended by the Prosecuting Attorney to the Circuit Judge on November 19, 1951, and accepted by the Circuit Judge, all these facts being well known by Defendant Whitsitt. On November 24, 1951, Rev. Jackson was called to Defendant Whitsitt's office where Defendant Whitsitt wrongfully withheld the concurrence of the Prosecuting Attorney and Circuit Judge in the proposed plea, and falsely represented to him that the Judge and Prosecuting Attorney were demanding a bribe of $2,750 of which the Defendant would pay $1,500 if Rev. Jackson would advance an additional $1,250 to cover the alleged demands. Defendant Whitsitt again magnified the seriousness of the case, and later confirmed his fraudulent demand by offering to escrow $1,000 of his own money with $1,250 from Rev. Jackson to guarantee the acceptance by the Court of a plea of guilty of C. A. Jackson to the lesser offense with a penitentiary sentence. Rev. Jackson declined the offers of Defendant Whitsitt, and

after consulting others he reported the matter to the proper authorities and made affidavit before the Greene County Bar Association, which in turn referred the complaint to Plaintiff Bar Rules Committee.

"In addition to the foregoing acts of withholding the true facts from his clients, of extracting an excessive fee from his clients on exaggerated and fraudulent representations, and in attempting to extort a further undeserved fee by means of false and slanderous statements defaming the administration of justice and reflecting on the integrity of the court and its officers, Defendant Whitsitt has shown a pattern and course of conduct in the past in the following instances of unprofessional dealings between lawyer and client:

"In 1948, Defendant Whitsitt filed two damage suits in the Greene Circuit Court under the style of (1) *Thelma Howard, Admx.* v. *Gulf Refining Co., J. S. Horne* and *B. C. Lloyd,* and (2) *Clifford Howard, Sr., Gd.* v. *Gulf Refining Co., J. S. Horne and B. C. Lloyd.* During settlement negotiations between Defendant Whitsitt and counsel for Gulf Refining Company, Defendant Whitsitt called the local Gulf dealer, J. S. Horne, into his office for conference. Defendant Whitsitt expressed dissatisfaction over the amount of fee he would get from the proposed settlement, and suggested to J. S. Horne that if he would secretly pay him $1,000 or $2,000 the settlement with the Gulf Company could be consummated and Horne would benefit by being relieved of his part in the litigation. According to the terms of this unethical proposal, Defendant Whitsitt's clients were not to know of or share in the payment he suggested Horne make to him in confidence. J. S. Horne declined the unethical offer made to him by Defendant Whitsitt.

"Early in 1951, Defendant Whitsitt was employed by Gertrude Scott and paid $575 on his representation that he could secure for her the release from the penitentiary of her husband, Daniel Monroe Scott, who had been convicted of Second Degree Murder and sentenced to imprisonment for seven years, beginning December 12,

1950. Pursuant to this employment Defendant Whitsitt secured a 6-day furlough for Scott in the Spring of 1951, and upon representations of being able to get Scott a furlough of indefinite duration, so as to amount to virtual freedom, Gertrude Scott and her husband made further payments to Defendant Whitsitt of about $175.00. The only other service rendered for these fees was the securing of another furlough totaling 50 days. Defendant Whitsitt did not act with candor and fairness in his assertions and representations to these clients and was guilty of gross over-reaching in his dealings with them.

"Cosmo Wilson of Greene County, Arkansas, was charged with the crimes of rape and incest, and inasmuch as he was without funds to employ counsel, the Court appointed Defendant Whitsitt as a member of the bar without fee, to represent the indigent defendant Wilson. A special setting of the case was made for February 13, 1950. In the meantime, Defendant Whitsitt learned that Wilson had acquired some money, and on February 12, 1950, he informed Wilson that unless he employed his law partner for a fee of $150 he (Defendant Whitsitt) would feign illness at the trial the following day, and the case would have to be continued over until the next term of court in May. Since Cosmo Wilson was unable to make bail, he would be held in jail without trial until that time. Wilson refused to pay the fee demanded, and according to his threats Defendant Whitsitt reported to the Court the following day that he was ill and unable to proceed to trial, although he was not ill and as a matter of fact transacted some business at his office during the day. The Court was not aware of Defendant Whitsitt's malingering, however, and upon his representation continued the case until May 18, 1950, when Wilson was tried and convicted."

Issues were joined by the filing of a general denial on behalf of the defendant and the taking of testimony was concluded on February 14, 1953. Following oral arguments, the case was taken under advisement. The record is rather voluminous and no attempt will be made to abstract the evidence in detail. In a general way, the proof

as it relates to the specific charges of misconduct will be analyzed.

The defendant is 41 years old and was admitted to the Bar in 1933. From the date of his being licensed to practice law until 1947, he was employed by a number of insurance companies, was connected with the claims division of the Ford Motor Company in Detroit, served as chief enforcement attorney in the lumber division of the Office of Price Administration (OPA) and for a brief period was special assistant U. S. District Attorney. In 1947 he formed a partnership in Paragould where he was born and reared, and has continued in the private practice there since that date. He was elected City Attorney of Paragould and served two and a half years. Over a period of some four years, he formed and dissolved partnerships with three different lawyers. Two of his former partners were character witnesses against him. He has been active in civic, fraternal and boy scout work and is a director of the Board of Commerce of Paragould.

## FINDINGS

### 1 & 2.

Paragraphs 3 and 4 of the complaint charge in brief that the defendant was employed by the son and son-in-law (both ministers) of C. A. Jackson to defend Jackson against a charge of raping a 5-year-old girl; that after charging and receiving a fee of $3,000 for handling the case, the defendant signed a contract reciting a consideration of $1,000 in full payment of all attorney's fees; after having obtained the consent of the accused to enter a plea of guilty to the lesser charge of assault with intent to rape and accept a penitentiary sentence, an agreement was made with the prosecuting attorney whereby the prosecuting attorney recommended to the Court that the plea to the lesser offense be accepted and that such recommendation was accepted by the Circuit Judge on November 19, 1951; that notwithstanding this arrangement, of which the defendant had full knowledge, the defendant

failed to reveal the true facts to his client or client's son, but instead falsely represented to the client's son that the trial judge and the prosecuting attorney were demanding a bribe of $2,750 for granting C. A. Jackson the proposed leniency.

It is also alleged in the same paragraphs that the fee charged by the defendant was excessive and that there was an attempt by the defendant to extort an additional undeserved fee by means of false and slanderous statements which were defamatory of the administration of justice and which brought in question the integrity of the court and its officers.

The allegation that an excessive fee was charged by the defendant for representing Jackson is not sustained by the proof. In fact, there was no evidence of a substantial nature offered on this point. When the gravity of the charge against Jackson, the time, labor and skill required to properly conduct his defense, and the customary charges of other lawyers for similar services are taken into consideration, surely it cannot be said that the fee collected by the defendant was excessive, exorbitant or unreasonable.

The evidence bearing on the allegation that the defendant undertook to extract an additional fee from his employer (the son of the accused C. A. Jackson) by falsely representing that the Judge and Prosecuting Attorney were demanding bribes will not be discussed in detail. It seems sufficient to suggest that on this point, the controversy resolves itself into the simple proposition of accepting the version of the defendant or the statements of two ministers, the prosecuting attorney, the deputy prosecuting attorney, and other witnesses who gave evidence of a corroborative nature. It appears beyond question that the aforesaid charge has been established by a clear preponderance of the evidence.

### 3.

Another paragraph in the complaint charges the defendant Whitsitt with unethical practice in approaching

one of several defendants (all represented by counsel) whom Whitsitt had sued on behalf of his clients (the plaintiffs) for the purpose of procuring a separate settlement with that defendant. The alleged vice, in addition to by-passing opposing counsel, is that by the terms of the proposed settlement the particular defendant to whom overtures were made was to gain an advantage over the other defendants in the settlement of the cases while Whitsitt's clients were not to be apprised of the side agreement whereby Whitsitt was to be compensated in excess of the fee for which he had agreed to represent the plaintiffs.

The evidence on this charge is rather brief. Jones Horne, who was one of the defendants in the cases in which Whitsitt represented the plaintiffs, testified that he went to Whitsitt's office in response to a request by telephone from Whitsitt and that Whitsitt said, "It is not you we are after ... We are after the company." (Meaning the Gulf Oil Company, which was a defendant with Horne.) Horne further stated that Whitsitt said "I thought if we could work out a deal where you would pay half as much as the company, we could compromise it. I would recommend to my clients to accept the compromise."

This conversation which was categorically denied by Whitsitt is said by Horne to have taken place in the absence of Horne's attorney, the attorney for the Gulf Refining Company and a Jonesboro lawyer whom Whitsitt had associated with him in the cases. The proof on this charge is sufficient to support a finding that the defendant Whitsitt violated the rules of the Supreme Court of Arkansas governing the professional conduct of attorneys.

4.

Another paragraph in the complaint relates to the employment of the defendant by Gertrude Scott for procuring the release of her husband, Daniel Monroe Scott, from the Arkansas State Penitentiary to which Institution Scott had been committed on December 12. 1950,

for a term of seven years. The evidence on this charge is not too convincing one way or the other. If the testimony of the complaining witnesses on this point is accepted as true and accurate, the defendant Whitsitt may have received greater remuneration than the services he rendered justified and there may have been assurance to the distressed wife of relief that could not have been reasonably expected. The proof on this issue, even if clear and convincing, would not justify disbarment, but it is of value in determining whether the defendant has pursued a course of conduct that is condemned by the accepted canons of professional ethics.

5.

The final charge leveled against the defendant by the Bar Rules Committee relates to the Cosmo Wilson case. Here again we have a situation where the proof is sufficiently clear to show that the defendant did not deal with the court and the prosecuting attorney with that measure of candor and fairness which is required of those who are primarily responsible for maintaining the integrity and dignity of our judicial structure. The conduct of the defendant in this instance while subject to censure would not, if considered alone, justify disbarment, although it does point toward a course of conduct that is not to be condoned.

## CONCLUSIONS

Having determined that the defendant is guilty of unprofessional conduct, the court is then confronted with the extremely serious problem of fixing the punishment. . . .

The privilege of practicing law is a lofty and valuable one that should be terminated only after a cautious and sedulous study of the facts. Courts are properly reluctant to disbar or suspend a practicing attorney. On the other hand, the Judiciary and members of the legal profession are duty bound to see that the honor and integrity of the Bench and Bar are maintained free from tarn-

ish and condemnation. When one is accorded the high honor of being admitted to the bar, he is thereby dedicated to the all important task of maintaining the time honored ethics of the profession and failing in this, he should expect to make recompense for his transgressions.

The Defendant Whitsitt has pursued a course of conduct that is not in keeping with the high standards of ethics that ought to circumscribe the acts of those in a profession which must maintain the absolute confidence and respect of the public. He has made marked progress in overcoming the desire for strong drink, but unfortunately he has displayed a rather obvious lack of appreciation of the exalted, moral and ethical code that should motivate every act, relation and transaction of one engaged in the time honored profession of practicing law.

## JUDGMENT

Based upon the foregoing findings and conclusions, it is by the Court, CONSIDERED, ORDERED and ADJUDGED THAT Horace Whitsitt be, and he is hereby from this date permanently disbarred from the practice of law in all of the courts of the State of Arkansas, and he, the said Horace Whitsitt, is hereby ORDERED and DIRECTED not to engage in the practice of law in any manner whatsoever in this State.

This judgment is rendered and entered in open court this 13th day of June, 1953.

GUY AMSLER,
*Judge on Exchange.*

---

*Per Curiam.* A careful study of the entire record convinces us that Judge Amsler was correct in his findings and conclusions. Therefore the judgment of the Circuit Court is in all things affirmed.