380 P.2d 845

Charles A. MEEKER, Plaintiff-Appellant,

v.

W. E. WALRAVEN, Defendant-Appellee.

No. 7168.

Supreme Court of New Mexico.

April 8, 1963.

Rehearing Denied May 9, 1963.

Charles A. Meeker, Albuquerque, pro se.

Dolan & Clear, Warren F. Reynolds, Albuquerque, for appellee.

CHAVEZ, Justice.

This case arose out of a contract entered into between plaintiff-appellant, Charles A. Meeker, and defendant-appellee, W. E. Walraven, dated February 11, 1960, involving the purchase by appellee of a one-eighth working interest in a certain oil and gas well in Erick, Oklahoma.

Appellant originally filed suit for declaratory judgment in Bernalillo County, New Mexico. He named Troy Hembree, personally, and the Capital Well Servicing Company as defendants. By order of the district court dated April 13, 1960, appellee was interpleaded as a party in interest, and on May 6, 1960, by order of the district court, appellee was directed to answer appellant's amended complaint, wherein appellant prayed for judgment against appellee in the sum of $6,800, which sum appellant alleged he was required to pay to Capital Well Servicing Company and which sum was due from appellee to said company.

All issues between the original parties were settled and the district court entered an order dismissing appellant's complaint as to Capital Well Servicing Company, thus leaving appellant and appellees as the parties-litigants.

On May 18, 1960, the firm of Phillips, Dolan & Clear, by Terrance L. Dolan, entered their special appearance as attorneys for appellee and filed a motion to dismiss appellant's claim.

On September 27, 1960, appellee filed an answer and counterclaim wherein he asked judgment in the sum of $6,000 for services rendered at Erick, Oklahoma; for $2,805.46 for sums expended by him as a result of the conduct of appellant; for the sum of $4,895.62 for obligations incurred in connection with the purported contract between the parties; and specifically for demands made upon appellee in the above mentioned sum by the Western Company of Ft. Worth, Texas, and which said sum appellee paid or has obligated himself to pay; and that as a result of appellant's conduct, appellee was required to retain the services of counsel and will be required to pay said counsel reasonable attorney's fees in the sum of $5,000. Appellee prayed judgment against appellant in the sum of $18,701.08.

On October 3, 1960, appellant filed a motion for summary judgment, wherein he alleged the following:

"(2) Indeed it is difficult to adequately put into words a proper condemnation of such a disgraceful and inadequate, and wholly untrue Pleading as has been submitted by Defendant Walraven, which is dated September 27, 1960, and separately answered. The idiotic rantings and ravings coupled with the vicious untruths, (fully proved as prevarications in Walraven's own sworn testimony in his two depositions dated September 17, 1960, and June 22, 1960), can only be compared with the insane lies of the two Deceiver's KRUSCHEV AND CASTRO. Nations as well as individuals have all too often followed the course that regardless of the Justness, or the Truthfulness, that any means of falsehood or deception, coupled with a full measure of legal RED-TAPE, and TECHNICAL-

ITIES, justifies the Ends. We, not only as Individuals, but as a Nation should think of these very Immoral Conclusions, and Positions, not only with our heads, but with the very marrow of our bones. Like the above two quibbling, evasive, Equivocators, this Defendant (Walraven), by his shiftless, irresponsible, and entirely untrue Ambiguities given in his disgraceful Answer of September 27, 1960, hopes to so confuse the issues to a point where he can evade his Just Obligations. In this, he is just like all other Squealing, Quibbling, Squirming, prevaricating Welchers.

"(3) It is rare indeed when a Case evolves itself to a point where by the depositions of a defendant, through his own sworn testimony, so completely and without the slightest doubt, establishes his liability in every detail. In plaintiff's separate answer to defendant Walraven's answer of September 27, 1960, and which answer is submitted at the same time of this Motion for Summary Judgment, complete references as to Page Numbers, and Line Numbers are furnished. There is not the slightest doubt of Walraven's full and complete liability. In fact, to allow this action to continue will only result in the grossest of abuse of process. It is most urgently prayed that every detail of these depositions, interrogatories, and affidavits be studied in detail and with great care. The State of New Mexico should not be burdened with such a silly, unsound, prattle of untruths in view of the unquestionable absolute preponderance of evidence, that has been fully established in this case. In fact, most of the facts have been established by Walraven himself."

On October 6, 1960, by virtue of the inherent power invested in the district court, and on the court's own motion, it ordered paragraphs 2 and 3 of appellant's motion for summary judgment stricken as scandalous and irrelevant matter.

On October 10, 1960, appellant filed another motion for summary judgment based on alleged sworn admissions of appellee in two depositions of appellee taken on June 22 and September 17, 1960.

On November 21, 1960, appellee filed his first amended answer and first and second amended counterclaims, which denied the allegations of appellant's complaint, except that appellee admitted he signed the instrument designated as "Enclosure B" of appellant's basic petition. Appellee specifically denied that said instrument created a valid contractual obligation. The second cause of action alleged that on October 3, 1960, appellant maliciously prepared and composed a certain writing denominated a "Motion for Summary Judgment," and alleged further that said writing contained false

and defamatory matters in paragraphs 2 and 3 thereof; that pursuant to appellant's malicious intent, said writing was read by the judge of the district court and diverse other persons; that said defamatory matter was calculated to cause great injury to appellee's reputation for honesty, uprightness of character, truthfulness, and allegiance to the Constitution of the United States of America and the state of New Mexico; that said statements made by appellant were not within the purview of any issue of fact or question of law at issue in said cause, and were prepared, composed and published by appellant with a malicious intent to damage the reputation of appellee; that appellee was entitled to punitive damages in the sum of $50,000; that as a result of said publication, appellee suffered actual damages in the sum of $10,000. Appellee prayed for judgment against appellant in the sum of $60,000.

On November 28, 1960, appellant filed a motion to dismiss appellee's first affirmative defenses and first and second causes of action set out in appellee's first amended answer and counterclaims.

The record is replete with numerous and sundry motions and affidavits of appellant and other parties, requests for admissions to written interrogatories, a digest of law and facts, depositions and arguments, requests for admissions, and requests for inferrogatories. Nevertheless, after the voluntary disqualification and recusal of the four district judges of the second judicial district, the cause came on for trial before the Honorable Frank B. Zinn, district judge of the eleventh judicial district, by designation of the chief justice of the supreme court, and a jury, on October 23, 1961. On October 25, 1961, the jury, having heard the evidence of the parties and being duly instructed by the district court, rendered a verdict for appellant on his cause of action arising from the contract and assessed damages in the sum of $6,488.34. On appellee's first counterclaim, the jury found the issues against appellee and for appellant. On appellee's second counterclaim, based on libel, the jury found the issues for appellee and against appellant and assessed appellee's damages in the sum of $6,488.34. It is from the jury's verdict on appellee's second counterclaim that appellant perfected this appeal.

■ Appellant's statement of the facts does not comply with our rules. It contains a recitation of appellant's education, training, business operations and residence, together with arguments on the morality of investors and, by innuendo, argues on appellant's views as to the irresponsibility of some lawyers in filing law suits, all of which are improper in setting out a statement of the facts. In his statement of the facts, appellant also gives citations to the New Mexico Digest, Corpus Juris Secundum, and other texts; sets out impertinent and scan-

dalous argument; quotes appellee's admissions, with transcript references; and, as such, appellant's statement of the facts, containing six typewritten pages, is worthless and unworthy of consideration.

Appellant and appellee entered into a written contract relating to the purchase of a one-eighth working interest by appellee in an oil and gas well being drilled in Erick, Oklahoma. Appellant's claim is that appellee failed to make payment of a number of obligations incurred under his responsibility under the contract, and that as a result of appellee's failure to make said payments, appellant was compelled to pay said accounts in the sum of $6,488.34.

Appellee denied appellant's claim and affirmatively alleged that appellant made misrepresentations of fact to the effect that there was an existing gas well on the property in which appellee purchased the working interest. Appellee's first counterclaim is for recovery of monies expended by him in the sum of $6,920.80, and to recover damages for loss of time in the sum of $6,000. The basis of appellee's first counterclaim is that he was induced to enter into the agreement by fraudulent misrepresentations on the part of appellant.

Appellant's points, which are decisive of this case, are his contentions that the trial court committed error "in the improper court instructions given in this action. (Tr. 299 to 311, and especially instructions NOS, 15, 17 and 20)."

Nowhere in the record is there a specific objection by appellant to the instructions given by the trial court with respect to libel, except as hereinafter set out, and appellant did not tender any instructions setting out what he considered was a correct statement of the law upon any point relating to libel. The only objection made by appellant is contained in the following language:

"I object to the injection of the libel phase into this case, and to all instructions of the defendant Walraven's attorneys as related to the libel phase of the action."

Thus, we are faced with the question of whether appellant preserved error in the trial court's instructions so that it can be considered by us on appeal.

This question has been before us on numerous occasions. In State v. Compton, 57 N.M. 227, 257 P.2d 915, we said:

"* * * The primary purpose of any objection to an instruction is, of course, to alert the mind of the judge to the claimed error contained in it, to the end that he may correct it. This fundamental purpose must be read into any and all rules on the subject. * *

* * * * * *

"* * * But, where the court has instructed erroneously on the subject, although a correct instruction has been tendered on the point, if it leaves it doubtful whether the trial judge's mind

was actually alerted thereby to the defect sought to be corrected by the requested instruction, the error is not preserved unless, in addition, the specific vice in the instruction given is pointed out to the trial court by proper objection thereto."

We followed the above rule in Lucero v. Torres, 67 N.M. 10, 350 P.2d 1028, wherein the trial court instructed the jury on the doctrine of unavoidable accident. Objection was made to the instruction:

" * * * 'on the ground that the evidence does not justify the giving of such an instruction; that there was a clear showing of negligence on the part of the defendant, and that to submit this issue to the jury unduly emphasizes the burden on the plaintiffs through their case to their prejudice.' "

We held that appellant could not raise the issue because he failed by proper objection to preserve the error, if any, of the lower court, in that the trial court was not apprised of the inaccuracy of its instruction, as being an incorrect statement of the law of unavoidable accident, by the objection made by appellant.

We thought that we had clearly set out the proper method to preserve error in the giving or refusing of an instruction. In Baros v. Kazmierczwk, 68 N.M. 421, 362 P.2d 798, we stated:

"It is our understanding of the holding in State v. Compton that to preserve error in instructions for review, (1) it is sufficient if a correct instruction has been tendered, if the court has not instructed on the subject matter; (2) if, however, the court has instructed erroneously on a subject, even where a correct instruction has been tendered, it must be clear in the record that the error has been called to the court's attention. Where the court has instructed erroneously, it is not a prerequisite to a right to complain of an instruction that a correct instruction be offered—rather the important question concerns the clarity with which the errors in the instruction given have been called to the attention of the trial court. * * *"

■ Appellant has not met the requirements of our rule, that the specific defect in the instruction given be clearly pointed out to the trial court. Accordingly, appellant cannot, on appeal, raise the issue since he failed, by proper objection, to preserve the error.

■ We would be remiss in our duty if we did not seriously comment upon the language used by appellant in his briefs. The fact that appellant is both client and lawyer does not excuse him from the scandalous, abusive and offensive language

which he has used in his briefs, both toward appellee and appellee's attorney. Appellant also improperly reflects upon our judicial system and our courts. We remind appellant, as a member of the Bar of this state, that in any cause in which he appears he is an officer of the court; that when he was admitted to practice law in New Mexico, he swore, under oath, that he would maintain the respect due to courts of justice and judicial officers; that he would abstain from all offensive personality, and advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which he is involved; that he would employ for the purpose of maintaining a cause such means only as are consistent with truth and honor, and will never seek to mislead the judge or jury by any artifice or false statement of fact or law. As an officer of the court, an attorney's personal conduct must be above reproach. He may not permit his personal feelings and interest to take precedence over his obligation of respect to the judicial process and judicial officers. The Canons of Professional Ethics of the American Bar Association are his guide when dealing with other lawyers, clients, and adverse litigants. Canons 17 and 18 state:

"17. Clients, not lawyers, are the litigants. Whatever may be the ill feeling existing between clients, it should not be allowed to influence counsel in their conduct and demeanor toward each other or toward suitors in the case. All personalities between counsel should be scrupulously avoided. In the trial of a cause it is indecent to allude to the personal history or the personal peculiarities and idiosyncrasies of counsel on the other side. Personal colloquies between counsel which cause delay and promote unseemly wrangling should also be carefully avoided.

"18. A lawyer should always treat adverse witnesses and suitors with fairness and due consideration, and he should never minister to the malevolence or prejudices of a client in the trial or conduct of a cause. The client cannot be made the keeper of the lawyer's conscience in professional matters. He has no right to demand that his counsel shall abuse the opposite party or indulge in offensive personalities. Improper speech is not excusable on the ground that it is what the client would say if speaking in his own behalf."

Appellant's contention, that he was entitled to call the opposing counsel as a witness, was properly refused by the trial court. The Canons of Professional Ethics do not specifically cover this matter. Canon 19 states that, except in the instance when it is essential to the ends of justice, a lawyer should avoid testifying in court in be-

half of his client. Canon 37 requires a lawyer to preserve the confidence of his client. As appellant sought to have the opposing counsel testify adversely to the interests of said counsel's client, and there being a good possibility that such testimony would require him to breach his client's confidence, it was clearly not error by the trial court to refuse to require appellee's attorney to take the witness stand and be questioned by appellant.

We believe, under the state of the record and the briefs submitted by appellant in this case, that appellant is subject to reprimand. However, appellant states that even though he has been admitted to the Bar of this state, this is the only case that he has personally tried. Even so, appellant is exceptionally well educated, a graduate of one of our military academies, and a retired member of our armed forces. With this background, he should know that all that is expected of him, as a member of the Bar, is that he comport himself according to the standards of the legal profession and, according to the standards well known to him, that he comport himself as an officer and a gentleman. This should be fair warning.

Costs in connection with the preparation of the record in this cause on appeal, as set out under our Rule 22, will be assessed against appellant.

Finding no error, the judgment of the district court, entered pursuant to the jury's verdict, is affirmed.

It is so ordered.

CARMODY and NOBLE, JJ., concur.