414 P.2d 862

**In the Matter of Charles A. MEEKER, Attorney at Law.**

**No. 7726.**

Supreme Court of New Mexico.

May 16, 1966.

Rehearing Denied June 8, 1966.

Robert S. Skinner, Raton, for Board of Bar Commissioners.

Charles A. Meeker, Albuquerque, pro se.

CASWELL S. NEAL, District Judge.

An original complaint was filed before the Board of Bar Commissioners by Robert S. Skinner, Chairman of the Committee on Ethics, Grievances and Discipline, against Charles A. Meeker, a member of the Bar of this state. The bases for the complaints set forth therein are:

(1) By reason of the language employed in the briefs in the case of Meeker v. Walraven, 72 N.M. 107, 380 P.2d 845, and in Meeker v. Walraven, 375 U.S. 829, 84 S.Ct. 73, 11 L.Ed.2d 60; rehearing denied, 375 U.S. 917, 84 S.Ct. 191, 11 L.Ed.2d 157, the said Charles A. Meeker has violated the oath which he took on being admitted to the State Bar of New Mexico.

(2) That the language employed in briefs in the above mentioned cases constitutes a violation of Canons 15 and 22 of the Cannons of Ethics of the Bar.

(3) That the language employed by the said Charles Meeker in the briefs in the above referenced cases was abusive and offensive against the District Court Judges and Courts of the State of New Mexico, and constitutes a violation of Canon 1 of the Canons of Ethics of the Bar.

After due notice to Mr. Meeker, a hearing was held before the Board of Bar Commissioners of the State of New Mexico on September 18, 1964. The transcript of record before the Commission, consisting of 339 pages, is a part of the record herein.

Under Rule 3 of the Supreme Court Rules, the Commissioners hear the grievance and report to the Supreme Court their findings, conclusions and recommendations.

After the hearing, the Commissioners, as referees of the Court, made the following findings of fact:

"1. That proper service of the Complaint has been made upon the Respondent, and the Respondent is properly before the Commission.

2. That Respondent is a duly admitted member of the State Bar of New Mexico and took the oath of admission required

by the Rules of the Supreme Court of New Mexico.

3. That in briefs filed in the case of Meeker v. Walraven in the Supreme Court of New Mexico, 72 N.M. 107, 380 P.2d 845, and in the Supreme Court of the United States in Cause No. 298 of the October 1963 Term of said Court [375 U.S. 829, 11 L.Ed.2d 60, 84 S.Ct. 73; rehearing denied, 375 U.S. 917, 11 L.Ed.2d 157, 84 S.Ct. 191], the Respondent employed scandalous, misleading, reckless, abusive, disrespectful and offensive language directed to the Courts, parties and attorneys of New Mexico.

4. That in the District Court proceeding commenced in 1960 the Respondent embarked upon the course of conduct described in Finding No. 3 above; that in the opinion handed down by the Supreme Court of New Mexico in the case described in Finding No. 3 above, which was filed on April 8, 1963 the Respondent was clearly warned against such practices and to comport himself according to the standards of the legal profession. That despite such warning the Respondent continued the same course of conduct in his Petition for Rehearing before the Supreme Court of New Mexico, and in his Petition for Writ of Certiorari and Petition for Rehearing filed in the Supreme Court of the United States in the October 1963 Term.

5. Throughout the hearing held before these Referees on September 18, 1964, the Respondent showed no feeling of remorse or intention to change such course of conduct."

The following conclusions of law were reached by the Commissioners:

"1. That the Referees have proper jurisdiction of the Respondent and of the charges contained in the Complaint.

2. That the language employed by the Respondent in said briefs violated Canons 1, 15 and 22 of the Canons of Ethics of the State Bar of New Mexico and violated the oath taken by Respondent upon his admission to the State Bar of New Mexico.

3. That the course of conduct followed by the Respondent as referred to in the foregoing Findings of Fact displays a reckless and intemperate disregard of the obligations of an attorney.

4. That the course of conduct of the Respondent shows an inherent lack of capacity for restraint which demonstrates his unfitness to be a member of the Bar.

5. That the facts found by the Referees have been established and are supported by clear and convincing evidence."

The Commissioners recommended that Respondent be disbarred.

The oath of an attorney is a solemn and sacred obligation, not to be lightly dealt with or disregarded. It is as follows:

"I, ..............., do solemnly swear:

I will support the Constitution of the United States and the Constitution of the State of New Mexico;

I will maintain the respect due to Courts of Justice and judicial officers;

I will not counsel or maintain any suit or proceeding which shall appear to me to be unjust, nor any defense except such as I believe to be honestly debatable under the law of the land;

I will employ for the purpose of maintaining the causes confided to me such means only as are consistent with truth and honor, and will never seek to mislead the judge or jury by any artifice or false statement of fact or law;

I will maintain the confidence and preserve inviolate the secrets of my client, and will accept no compensation in connection with his business except from him or with his knowledge and approval;

I will abstain from all offensive personality, and advance no fact prejudicial to the honor or reputation of a party or witness unless required by the justice of the cause with which I am charged;

I will never reject from any consideration personal to myself the cause of the defenseless or oppressed, or delay any man's cause for lucre or malice.

SO HELP ME GOD."

The canons of professional ethics must be enforced by the Courts and must be respected by members of the Bar if we are to maintain public confidence in the integrity and impartiality of the administration of justice. Canon No. 1 is as follows:

"1. The Duty of the Lawyer to the Courts.

It is the duty of the lawyer to maintain towards the Courts a respectful attitude, not for the sake of the temporary incumbent of the judicial office, but for the maintenance of its supreme importance. Judges, not being wholly free to defend themselves, are peculiarly entitled to receive the support of the Bar against unjust criticism and clamor. Whenever there is proper ground for serious complaint of a judicial officer, it is the right and duty of the lawyer to submit his grievances to the proper authorities. In such cases, but not otherwise, such charges should be encouraged and the person making them should be protected."

Canon No. 15 is, in part, as follows:

"15. How Far a Lawyer May Go in Supporting a Client's Cause.

Nothing operates more certainly to create or to foster popular prejudice against lawyers as a class, and to deprive the profession of that full measure of public esteem and confidence which belongs to the proper discharge of its duties than does the false claim, often set up by the unscrupulous in defense of questionable transactions, that it is the duty of the lawyer to do whatever may enable him to succeed in winning his client's cause.

It is improper for a lawyer to assert in argument his personal belief in his client's innocence or in the justice of his cause."

Canon No. 22 is as follows:

"22. Candor and Fairness.

The conduct of the lawyer before the Court and with other lawyers should be characterized by candor and fairness.

It is not candid or fair for the lawyer knowingly to misquote the contents of a paper, the testimony of a witness, the language or the argument of opposing counsel, or the language of a decision or a textbook; or with knowledge of its invalidity, to cite as authority a decision that has been overruled, or a statute that has been repealed; or in argument to assert as a fact that which has not been proved, or in those jurisdictions where a side has the opening and closing arguments to mislead his opponent by concealing or withholding positions in his opening argument upon which his side then intends to rely.

It is unprofessional and dishonorable to deal other than candidly with the facts in taking the statements of witnesses, in drawing affidavits and other documents, and in the presentation of causes.

A lawyer should not offer evidence which he knows the Court should reject, in order to get the same before the jury by argument for its admissibility, nor should he address to the Judge arguments upon any point not properly calling for determination by him. Neither should he introduce into an argument, addressed to the court, remarks or statements intended to influence the jury or bystanders.

These and all kindred practices are unprofessional and unworthy of an officer of the law charged, as is the lawyer, with the duty of aiding in the administration of justice."

The intemperance of the language used by Mr. Meeker in his briefs filed in the state court, in the view of the author of the opinion in Meeker v. Walraven, 72 N.M. 107, 380 P.2d 845, has been pointed out and a warning was issued to Mr. Meeker against a repetition of this reprehensible conduct. After this warning, the Petitioner filed a writ of certiorari in the Supreme

Court of the United States, No. 298, October 1963 Term. In this petition, Mr. Meeker stated as reasons for the granting of the writ, among other things, the following:

"It is common practice in lower appellate courts to ignore unquestionable facts to make opinions rendered fit the law quoted rather than the case tried and reviewed. This case is an example of such widespread customs. The final result is always a denial of justice, and the overcoming of all Constitutional guarantees by caprice and discretionary violations. * * *"

He further stated that:

"Attorneys, because of unwarranted protection and shelter given by judges in their desire to maintain the factual farce that no attorney can do wrong, are as a result virtually free to commit most civil frauds as well as business and social digressions. * * * The case in point is a perfect example of the treatment one may reasonably expect in a situation like this as is also indicated in the Peoples-Hambaugh Case subsequently outlined. * * *"

In his petition, he accused the participants in the opinion in Meeker v. Walraven, supra, of choosing to ignore undisputed facts and permitting the case to fall on tech-

nicalities alone and that the opinion was written to substantiate facts, not the case tried or reviewed; that the court ignored the facts in the case to make the law quoted in the opinion fit the facts included and not the case actually tried; that the reason therefor was to punish Meeker because he had dared suggest that some attorneys and courts are somewhat lacking in both character as well as in responsibility; that the facts in the opinion were carefully husbanded to fit the law quoted in the opinion rather than the case tried and reviewed on appeal and that this was done under very strange and disturbing circumstances; that in Peoples v. Peoples, 72 N.M. 64, 380 P.2d 513; second appeal, Hambaugh v. Peoples, 75 N.M. 144, 401 P. 2d 777, "The ladies were then summarily thrown out of court by the trial judge in a very obvious unjust manner. They too, had dared to part the sanctified curtain which has been drawn around courts and lawyers!" Meeker concluded his petition for a writ of certiorari by stating:

"There was a time in this Country when fundamental principles of right and justice were esteemed of minor importance compared to the quibbles, refinements, and the technicalities of special pleading. The fundamentals of law and justice during that unfortunate period seemed of trifling consequence. Happy for mankind and the law itself, that

epoch is past. But an attempt is here made by the Opinion Below to raise the long dead cadaver of such legal chicanery. * * *"

Many other quotations from the briefs and pleadings could be cited. It is sufficient to say here that a review of the record before the Commissioners and the questions involved, in our opinion, fully sustains the findings and conclusions of the Commissioners.

It developed during the hearing before the Commissioners that after the institution of this proceeding, the respondent Meeker filed Civil Action No. 5524 in the United States District Court for the District of New Mexico, against three justices of the Supreme Court of New Mexico, namely, the author of the opinion and the two justices who concurred. This action is in two counts. In the First Amended Complaint served upon the defendant justices on January 20, 1964, plaintiff Meeker sought to recover substantial actual and punitive damages, charging, among other things in this complaint, that the defendants had entered into a conspiracy to deny plaintiff a fair and impartial review in Meeker v. Walraven, supra, and that as a result of said conspiracy, the final trial and review was fraudulent, a farce and a sham and had no remote connection or relation with the cause tried by the trial court and reviewed by the defendants; that false facts were knowingly assumed so as to allow the cause to fail on a legal technicality; that the purpose of the defendants in entering into and carrying out said conspiracy was to punish plaintiff in a manner that was cruel and unjust and in strict violation of the oaths of office of said defendants and the State and Federal Constitutions; that the basic desire of defendants was to punish plaintiff because he had dared to severely criticize an Oklahoma judge and several Oklahoma and Texas lawyers; that in permitting the case to fall on a technicality, the acts of defendants were willful and malicious; that this is not the usual case where judges incorrectly assess facts and law as a result of ignorance, laziness or abuse of their discretion, but instead a willful and malicious improper ruling to gain and to satisfy grossly illegal motives; that the conspiracy pleaded had as its main purpose impeding the due course of justice with the malicious intent to deny plaintiff equal protection of the law and that in none of their official acts did the defendants act in an honest belief that they were doing right or were legally warranted in doing so or that said acts were within the scope of their official powers or in compliance with their respective oaths of office. Plaintiff further charged that defendants each took such action willfully, maliciously and

wantonly so that the trial and review became a sham, a farce and fraudulently achieved a final result of illegally depriving the plaintiff of a large sum of money.

Mr. Meeker introduced his First Amended Complaint as an exhibit during the hearing before the Commissioners although this was a matter not included in the original charge. However, in "Motions" dated November 10, 1964 and November 21, 1964 filed in the Supreme Court, and in his oral presentation before the Supreme Court, he asked that the allegations in the cause against the three justices be determined and considered by this court.

In these motions he has reiterated the charges and insists that he believes them to be true and unquestionable and has offered to prove them. This court concluded he should be given a chance to do so.

In the course of the proceedings in the Supreme Court, the respondent tendered his resignation as a member of the Bar under Rule 3.04, Supreme Court Rules. Under this rule, an offer to surrender a license to practice law in this state is effective only when such offer to surrender has been accepted by the Supreme Court. The court heretofore held an oral argument on this matter and after due consideration, entered an order dated December 8, 1964, finding: "That Movant's resignation should not be accepted and that Movant be allowed twenty days within which to file exceptions to the Report of the Bar Commissioners."

Although the original charges presented to the Board of Bar Commissioners were extremely serious, they in no way compared to the enormity of the charges made against the three justices of the Supreme Court. If the respondent could prove only part of the charges alleged, the members of the court who are guilty should be impeached and disbarred. On the other hand, if Mr. Meeker could not prove the charges, he is guilty of extremely serious and unprofessional conduct and should be disbarred for the good of the profession and in order to uphold the administration of justice in this state. If he cannot prove the charges, he is clearly in violation of his oath as an attorney and of the canons of ethics hereinabove cited.

A hearing was set before the court for the purpose of permitting Mr. Meeker to prove his charges, on January 25, 1966. It was determined not necessary to refer this matter to the Bar Commissioners in view of the direct charges made in the proceedings in this court after the report of the Bar Commissioners and Meeker's request that the court hear the matter, and after Meeker had reiterated his charges orally before this court.

After the matter was set for hearing, Mr. Meeker filed in this court an affidavit in which he, in substance, offers himself

as a candidate for disbarment for his efforts, among other things: "To try and bring this disgraceful conduct, practiced by a major percentage of judges and lawyers, to the attention of the public. * * *"

At the hearing before the court, respondent offered no proof whatever to sustain any charge made against the justices of this court, and shortly before this hearing before the court, he had dismissed the action pending in the federal court against the three justices.

He claims, as sustaining the allegations of the complaint, that the facts were misstated and distorted by the justices, with unholy designs, in their opinion in Meeker v. Walraven, supra. He also stated in his oral argument before this court that he could see an expression upon the face of the justice who wrote the opinion for the court, similar to that of "the cat that ate the canary" and that he "could smell a fraud a mile away."

He particularly based his charge against the justices on the following statement in the opinion:

"Nowhere in the record is there a specific objection by appellant to the instructions given by the trial court with respect to libel, except as hereinafter set out, and appellant did not tender any instructions setting out what he considered was a correct statement of the law upon any point relating to libel. The only objection made by appellant is contained in the following language:

'I object to the injection of the libel phase into this case, and to all instructions of the defendant Walraven's attorneys as related to the libel phase of the action.'

Thus, we are faced with the question of whether appellant preserved error in the trial court's instructions so that it can be considered by us on appeal."

The court then cited the cases of State v. Compton, 57 N.M. 227, 257 P.2d 915; Lucero v. Torres, 67 N.M. 10, 350 P.2d 1028, and quoted from Baros v. Kazmierczwk, 68 N.M. 421, 362 P.2d 798, as follows:

"It is our understanding of the holding in State v. Compton that to preserve error in instructions for review, (1) it is sufficient if a correct instruction has been tendered, if the court has not instructed on the subject matter; (2) if, however, the court has instructed erroneously on a subject, even where a correct instruction has been tendered, it must be clear in the record that the error has been called to the court's attention. * * *"

The court then stated:

"Appellant has not met the requirements of our rule, that the specific defect in the instructions given be clearly pointed out to the trial court. Accordingly, appellant cannot, on appeal, raise

the issue since he failed, by proper objection, to preserve the error."

It clearly appears from the arguments and from respondent's admissions before the Bar Commissioners and before this court, that respondent was not familiar with this simple requirement of the law. A review of the Supreme Court record in Meeker v. Walraven, supra, sustains the language in the opinion complained of and does not sustain Mr. Meeker's claims as set forth in his proceedings against the justices in the federal court.

He has wholly failed to prove his charges. He has been guilty of most reprehensible conduct. He has attacked the integrity, motives and character of three honorable men and able justices of this court. He has falsely attempted to bring disrepute upon an honorable profession and has attempted to destroy the trust of the people of New Mexico, and elsewhere, in their courts and in their judges.. He has not sustained his charges in the slightest degree. The charges are simply a figment of the fertile imagination of one who feels personally aggrieved because he lost his case. He has displayed the disposition of one who feels he can do no wrong and that the courts of justice can do no right.

Excerpts from some of the pleadings filed in the course of these proceedings fully sustain the conclusion of the Commissioners that, " * * * the course of conduct of the respondent shows an inherent lack of capacity for restraint which demonstrates his unfitness to be a member of the Bar."

In his affidavit filed January 6, 1966, he charges:

"If one is sufficiently trained in the law that he can handle his own case there is another method used on him. If he be an attorney he will be persecuted by the judges, and the bar associations, recommended for disbarment, insulted, and through fraudulent conduct disgraced, if at all possible. * * *

" * * * Affiant takes a very dim view of the frauds currently of common practice as have been outlined in the cases cited. * * * If this be cause for disbarment, then the Affiant gladly offers himself as a sacrificial goat, in his attempt to expose the disgrace to the public of this state. The price is cheap if the newspapers, radio, and the public will thereby be awakened. We should all vomit together. * * *

"Meeker admits that he did exactly what the findings of fact made by the Bar Commissioners said that he did, but he claims that what he has said is the truth; * * *.

" * * * Can Justices, acting as a Court, with jurisdiction of parties and subject matter, by design and with malice, choose false facts existing no place in the record of the case tried or appealed, with

**364**

the intended purpose to cause an appeal to fail on a technicality to permit the assessment of an illegal fine against Meeker, the Plaintiff, and not permitted in law, and still retain their judicial immunities? * * *

"* * * Instead it is the real danger and actual disintegrating of our judicial processes, that has led up to actual fraudulant practices in not only our District Courts but actually within this Honorable Court itself that is the real danger. * * *"

We think these quotations, which are only a minor part of what might be quoted here, indicate the maliciousness of respondent's attack upon the court. As a further example of his total lack of understanding of what constitutes right and proper conduct upon the part of an attorney toward the justices of the Supreme Court, Mr. Meeker, in his pleadings and memoranda in the case, has suggested that if the three justices charged would submit themselves to an operator chosen and approved by the F.B.I. to take a lie detector test, and if the tests do not show the intent as pleaded, Mr. Meeker would drop his cases in the federal court and apologize to each of the three justices. He further states: "In my own mind I do not think that they can pass such a test, and that the facts Meeker pleaded are basically all true and can be proven easily if ever given an opportunity." It is suf-

ficient to say that Mr. Meeker has been given an opportunity to prove the charges and has utterly and completely failed to do so.

Mr. Meeker contends that under the canons of ethics, Canon No. 29, his actions were justifiable. This canon reads:

"29. Upholding the Honor of the Profession.

Lawyers should expose without fear or favor before the proper tribunals corrupt or dishonest conduct in the profession, and should accept without hesitation employment against a member of the Bar who has wronged his client. The counsel upon the trial of a cause in which perjury has been committed owe it to the profession and to the public to bring the matter to the knowledge of the prosecuting authorities. The lawyer should aid in guarding the Bar against the admission to the profession of candidates unfit or unqualified because deficient in either moral character or education. He should strive at all times to uphold the honor and to maintain the dignity of the profession and to improve not only the law but the administration of justice."

We should be the last to deny that Mr. Meeker has the right to uphold the honor of the profession and to expose without fear or favor corrupt or dishonest conduct in the profession, whether the conduct be

that of a judge or not. In re Sawyer, 360 U.S. 622, 79 S.Ct. 1376, 3 L.Ed.2d 1473. However, this canon does not permit one to make charges which are false and untrue and unfounded in fact. When one's fancy leads him to make false charges, attacking the character and integrity of others, he does so at his peril. He should not do so without adequate proof of his charges and he is certainly not authorized to make careless, untruthful and vile charges against his professional brethren. State ex rel. Florida Bar v. Calhoon (Fla.1958) 102 So.2d 604; In re Robinson, 48 Wash. 153, 92 P. 929, 15 L.R.A.,N.S., 525; Atty. General v. Nelson, 263 Mich. 686, 249 N.W. 439; Annotation, 53 A.L.R. 1244.

In In re Sawyer, above cited, Justice Brennan, speaking for the court, said:

"We start with the proposition that lawyers are free to criticize the state of the law. * * * But all are free to express their views on these matters, and no one would say that this sort of criticism constituted an improper attack on the judges who enforced such rules and who presided at the trials. This is so, even though the existence of questionable rules of law might be said in a sense to produce unfair trials. Such criticism simply cannot be equated with an attack on the motivation or the integrity or the competence of the judges."

In Attorney General v. Nelson, supra, the court said:

"Courts generally recognize that the public, and this includes the attorneys, has the right to criticize their opinions, and such criticism, when fairly indulged in, does not subject an attorney to discipline by the court, but such criticism must not go so far as to attack the integrity of the judge who has rendered the decision. * * * 'but this privilege does not carry with it the right to charge fellow attorneys and the presiding judge with conspiracy and corruption, when there is no adequate basis for such a charge. In re Mains, 121 Mich. 603, 609, 610, 80 N.W. 714, 717.' "

In State ex rel. Florida Bar v. Calhoon, supra, relating to the canons of ethics, the court said:

"Canons of professional ethics are promulgated to establish rules and standards of conduct for the guidance of lawyers and judges in their relationship with each other as well as in their dealings with the public."

The attorney involved in this case had falsely accused a judge of gross misconduct. The court said:

"It would be contrary to every democratic theorem to hold that a judge or a court is beyond bona fide comments and criticisms which do not exceed the bounds

of decency and truth or which are not aimed at the destruction of public confidence in the judicial system as such. However, when the likely impairment of the administration of justice is the direct product of false and scandalous accusations then the rule is otherwise. 5 Am. Jur., Attorneys at Law, Sec. 266, p. 420."

The court further said:

"If our judgment appears to lack aspects of mercy our response in justification simply is that the effect of a single act of the nature here involved can never be completely eradicated nor will the administration of justice in the affected area ever completely eliminate the scars. It must not happen again."

See also, In re Mains, 121 Mich. 603, 80 N.W. 714, 717; State ex rel. Dabney v. Breckenridge, 126 Okl. 86, 258 P. 744, 53 A.L.R. 1239; Whitsitt v. Bar Rules Committee, 223 Ark. 860, 269 S.W.2d 699; People v. Parker, 328 Ill.App. 46, 65 N.E.2d 457, aff. 396 Ill. 583, 72 N.E.2d 848, aff. 65 S.Ct. 708, 333 U.S. 571, 92 L.Ed. 886; In re Cox, 164 Kan. 160, 188 P.2d 652; State ex rel. Nebraska State Bar Ass'n v. Wiebusch, 153 Neb. 583, 45 N.W.2d 583; Kentucky State Bar Ass'n v. Lewis (Ky.1955) 282 S.W.2d 321; Thatcher v. United States (C.A. 6, 1914) 212 F. 801.

While People v. Parker, supra, is a contempt case, it clearly establishes the rule of conduct which should guide attorneys in their duties to the courts and their professional brethren.

It is always a distasteful matter to find it necessary to disbar an attorney. It is our duty, however, to promote decency and dignity in an honorable profession; to protect the public and those charged with the administration of justice from falsehoods and abuse. The purpose of such a proceeding is not to punish an attorney, but to remove one unfit to be entrusted with the duties and obligations of an attorney. We find the respondent to be in this category. To permit him to continue to hold himself out as a member of the Bar of this state would reflect adversely upon the honorable members of the profession.

It follows from the foregoing that respondent's name should be stricken from the roll of attorneys of this court; that he should be precluded from practicing as an attorney in all courts of this state; that he should pay all the costs of this proceeding, save the cost of transcribing the record before the Board of Bar Commissioners.

It is so ordered.

MOISE and COMPTON, JJ., concur.